COMMONWEALTH of Pennsylvania, Appellee

v.

Jonathyn GRAVELLE, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 20, 2012.
Filed Oct. 26, 2012.

754

Harry J. Cancelmi, Jr., Waynesburg, for appellant.

John P. Friedman, Assistant District Attorney, Waynesburg, for Commonwealth, appellee.

BEFORE: DONOHUE, LAZARUS, JJ., and McEWEN, P.J.E.

OPINION BY McEWEN, P.J.E.

Appellant, Jonathyn Gravelle, appeals from the judgment of sentence—which consisted of the imposition of a fine, plus costs and fees [1]—that followed his conviction of the summary offense of operating/moving an unregistered vehicle, specifically a trailer, upon a Commonwealth highway. *See:* 75 Pa.C.S. § 1301. We are compelled to reverse.

The incident giving rise to this appeal occurred on November 12, 2011, when Trooper Matthew Jardine of the Pennsylvania State Police stopped appellant in Greene County, Pennsylvania, upon suspicion of speeding on Interstate Highway 79. At the time appellant was driving a 2009 Ford F–350 pickup truck with an attached trailer, later identified as a " 'Combination Mixer–Pumper MR 3300' cement mix pump/trailer, a device used to mix and spray concrete." [2] He was transporting the trailer from a job site in Kentucky back to Pennsylvania—a distance of approximately three hundred miles. Following his on-site investigation, Trooper Jardine issued two citations to appellant: one for speeding (which is not a subject of this appeal), and one for violating section 1301 of the Vehicle Code, which proscribes the operation of unregistered vehicles, not otherwise exempted by statute, upon Com-

---

1. Although not specified in the court's final decision, it was agreed at trial that the fine at issue was $75.00, and the costs were $125.00. *See:* N.T., January 9, 2012, pp. 57, 59. Appellant was also assessed, according to the trial court docket, miscellaneous fees totaling $77.00.

2. *See:* Trial Court Opinion, April 9, 2009, 2012, p. 1.

monwealth highways. *See:* 75 Pa.C.S. §§ 1301–1302.

Appellant subsequently challenged the citation issued pursuant to section 1301: first, in the Magisterial District Court, where he was convicted, and then in a *de novo* appeal to the Court of Common Pleas of Greene County, where he was again convicted. This appeal followed that decision of the Court of Common Pleas.

Appellant, in the brief submitted in support of this appeal sets out the following question for our review:

Did the trial judge err [in:]

(a) finding that the Commonwealth met its burden to prove beyond a reasonable doubt that a *Powercreter* combination mixer pump hauled behind a pickup truck was not a trailer used primarily for off highway use and operated incidentally upon the highway,

(b) interpreting Vehicle Code Section 1301 and 1302(11) on registration and exemptions from registration, and

(c) making findings in the statement pursuant to Pa.R.A.P. 1925 that are not supported by the record?

Brief of Appellant p. 8.

■ At its core, this complex question raises a pure legal challenge to the trial court's interpretation of the statutory definition of the offense of which appellant was convicted. Thus, our standard of review is *de novo,* and our scope of review is plenary. *See: Commonwealth v. Magliocco,* 584 Pa. 244, 249, 883 A.2d 479, 481 (2005).

As stated above, appellant was convicted of violating section 1301 of the Vehicle Code, which states in relevant part:

No person shall drive or move and no owner or motor carrier shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth *unless the vehicle is exempt from registration.*

75 Pa.C.S. § 1301(a) (emphasis supplied). Appellant's trial defense was founded upon establishing that his trailer (the "vehicle" in question) was "exempt from registration." Section 1302 of the Vehicle Code defines those vehicles that are exempt. It provides in relevant part:

The following types of vehicles are exempt from registration:

. . .

(11) Any trailer or semitrailer, including but not limited to non-self-propelled special mobile equipment and amusement rides constructed as an integral part of the trailer chassis to create a single unit, *to be used primarily for off highway use and only operated incidentally upon the highway.*

75 Pa.C.S. § 1302(11) (emphasis supplied).[3]

■ The trial in this case focused primarily upon whether the trailer in question was to be "only operated *incidentally upon the highway,*" since the parties agreed that the trailer constituted a "non-self-propelled special mobile [piece of] equipment . . . to be used primarily for off highway use." *Id.* (emphasis supplied). *See:* N.T., January 9, 2012, pp. 30, 52. In fact, the Commonwealth stipulated to this limited scope,[4] and also stipulated to the following summary description of the trailer:

---

**3.** It bears mention that section 1302 actually describes at least twenty types of vehicles—or categories of vehicles—that are exempt from registration. *See:* 75 Pa.C.S. § 1302(1)-(21).

**4.** N.T., *supra* at p. 8.

This equipment is brought to a [site], concrete then is brought by other means, locally I guess to the site and the pump, I guess there's some kind of thermal application and this is the equipment that does it. It doesn't haul men, it doesn't haul equipment, and it doesn't haul machinery.

N.T., *supra* at pp. 6–7. Basically, this piece of construction equipment is a single integrated unit, and its function is to "shoot" concrete onto the walls and into the seams of walls, during the construction of major projects such as power plants and steel mills. *Id.* at pp. 12, 28. The unit does not actually transport concrete, but utilizes the concrete that is either already onsite or separately brought to the site. *Id.* at pp. 42–43.

The trial court in justifying its conclusion that this piece of equipment was not exempt from the statute's registration requirement provided various statements of its rationale specifically:

1. [W]e determined that the MR 3300 Mixer–Pumper is configured as a trailer, and was not constructed as an integral part of the trailer chassis, *and its design to be transported, was not incidental* to it being upon the highway. In fact we found that "its design was to be intentionally on the highway.["] Therefore, it should be titled, licensed and inspected. Trial Court Opinion, April 9, 2012, p. 2 (emphasis supplied).

2. [T]he issue here is whether the Mixer–Pumper was constructed to be an integral part of the trailer chassis, and operated on the highway, only incidentally, Again, this Court found that it was *designed "intentionally"* to be transported on a highway. *Id.* at p. 4 (emphasis supplied).

3. We found that the MR 3300 was not designed to be operated or transported on public highways "incidental" to its use. To the contrary, *we found that it is designed "intentionally" to be transported long distances* behind a motor vehicle, as are the facts in this case. The trailer design aspect is very much of the "intentional" design which creates a marketing advantage and end-user convenience to its overall application and industrial purpose. This convenience and advantage should obligate the owner to both the identification, licensing and safety inspection obligations of other like trailers, which the driving public expects and deserves. *Id.* at pp. 6–7 (emphasis supplied).

4. [T]he MR 3300 *was designed to be used on the highways* in more than an incidental way. *Id.* at p. 8 (emphasis supplied).

The common tenor of each of these statements is the manner in which the trial judge interpreted and applied the statutory adverbial qualifier of "incidentally," which was to look at how the equipment was "designed."[5] However, in our view this constituted error.

**5.** In contrast, it is noteworthy that Trooper Jardine, who initiated these proceedings by issuing the citation, employed a completely different touchstone for analyzing the word. In relevant part, he testified on direct examination as follows:

... I read through all twenty-one of the exceptions, or exemptions as you said in the Vehicle Code and I didn't feel that this particular trailer fit the exemptions that were listed. I looked at two in particular. The first one was ... # 11, which talked about carnival trailers, construction trailers and equipment that also happens to have wheels that drives on the highway incidentally to its construction purpose. *I didn't think that quite fit under these circumstances because of the distance involved*

The Pennsylvania Statutory Construction Act[6] provides in relevant part that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). The grammatical definition of an adverb is as follows:

An adverb is a word used to modify, or qualify, a verb (or verbal), an adjective, or another adverb. It usually answers one of these questions: When? Where? How? Why? Under what conditions? To what degree?

*Rules for Writers*, Fifth Edition, Diana Hacker, Bedford/St. Martin's § 61e, p. 503 (2004). Thus, the primary inquiry in this case is to determine what word "incidentally" modifies or qualifies.

Again, the statutory exemption in question reads as follows:

Any trailer or semitrailer, including but not limited to non-self-propelled special mobile equipment and amusement rides constructed as an integral part of the trailer chassis to create a single unit, to be used primarily for off highway use *and only operated incidentally upon the highway.*

75 Pa.C.S. § 1302(11) (emphasis supplied). Since the adverb is placed directly after the verb "operated," the only reasonable interpretation is that the adverb modifies that word, and only that word. Thus, in our view, the focus of the trial court should have been on the functionality of the equipment (that is, how the machine "operated"), and not on its structural design, and/or its portability. Moreover, when viewed in that light, it is clear that the equipment was operational only when it had been transported to its intended "off highway" site—much like the "amusement

---

*that they were traveling from, from out of state.* I think the driver told me he was coming from Kentucky back to Carnegie, Pennsylvania. And the other one I looked at was the one for special mobile equipment [which the parties agree is not applicable to the facts of this case].

N.T., *supra* at p. 19. Thereafter, on cross-examination, the following exchange transpired:

[APPELLANT'S COUNSEL]: So your understanding then is that any pickup truck towing an air compressor, light tower fixture, portable welders, all those items have to be registered in Pennsylvania?

[TROOPER JARDINE]: Unless they fit one of the exemptions, it's my opinion that they have to be registered.

[APPELLANT'S COUNSEL]: Just assuming they are on Interstate 79 and they're more than one mile from home on the construction site [which was the qualifying condition for a piece of machinery labeled as "special mobile equipment," 75 Pa.C.S. § 1302(21)]?

[TROOPER JARDINE]: It's hard to determine what incidental is, incidental movement on the highway.... [But] I didn't think coming from Kentucky to Carnegie [Pennsylvania] was incidental.

[APPELLANT'S COUNSEL]: But that was my question, Bridgeville [PA] to Waynesburg [PA], at the Jefferson exit?

[TROOPER JARDINE]: *To me, incidental is a short distance on the roadway....* *Id.* at pp. 20–21 (emphasis supplied). Thus, in Trooper Jardine's mind, although he could not provide a precise measure that would initiate application of the statutory exemption, the distance that the subject equipment travelled on the highway—as opposed to the intrinsic nature of the equipment itself—triggered the registration requirement.

We think it is clear at the outset that, given the inherent vagueness and ambiguity in Trooper Jardine's interpretation of the statute, it cannot be accepted as controlling. *See generally: Commonwealth v. Ludwig*, 583 Pa. 6, 16–17, 874 A.2d 623, 629 (2005) (A statute must define a criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.). Therefore, we limit our attention to the interpretation employed by the trial court.

6. Act of December 6, 1972, No. 290 § 3; 1 Pa.C.S. § 1501 *et seq.*

rides" that are specifically identified in the same exemption section—and its presence on the highway was merely incidental [7] to its "use".

Consequently, we are compelled to respectfully reverse the decision of the trial court.

Judgment of sentence reversed.

---

7. The word "incidentally" is defined by *Webster's* as "[a]part from the main subject." *Webster's New College Dictionary*, Third Edition, p. 573 (2008).