J.S07036/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BENIGNO JOSE MULERO JR., | : | |
| | : | |
| Appellant | : | No. 750 MDA 2013 |

Appeal from the Judgment of Sentence March 25, 2013
In the Court of Common Pleas of Lancaster County
Criminal Division No(s).: CP-36-CR-0002636-2012

BEFORE: MUNDY, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED SEPTEMBER 24, 2014**

Appellant, Benigno Jose Mulero, Jr., appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas following his conviction for possession of a firearm with an altered manufacturer's number,[1] simple assault,[2] and recklessly endangering another person[3]

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6110.2(a).

[2] 18 Pa.C.S. 2701(a)(1).

[3] 18 Pa.C.S. § 2705. We note that Appellant was initially charged with aggravated assault, see 18 Pa.C.S. § 2702(a)(3), but the trial court, *sua sponte*, found him guilty of a "lesser charge" of reckless endangerment. N.T., 1/16/13, at 115. Appellant did not object to the trial court's verdict, and does not challenge his REAP conviction in this appeal.

("REAP"). Appellant claims his conviction for possession of a firearm with an altered manufacturer's number must be reversed because the evidence did not establish he acted recklessly to the fact that the firearm in his possession had an obliterated serial number. We conclude that Appellant is entitled to relief, reverse the conviction for possession of a firearm with an altered manufacturer's number, vacate the judgment of sentence and remand for resentencing.

The trial court summarized the background of this case as follows:

> On April 6, 2012, Officers from the Lancaster City Bureau of Police were dispatched . . . for a reported fight involving three males and a possible gun. Officer Ryan Hockley arrived to find two men, later identified as [Appellant] and David Rosario, in a heated argument. Officer Hockley observed Rosario remove what appeared to be a gun from his waistband, place it on the ground and punch [Appellant]. During the altercation, Rosario noticed Officer Hockley's presence and walked away from the scene, [Appellant], unaware of the Officer's presence, retrieved the gun and took aim at Rosario. Officer Hockley announced his presence and fired his duty weapon at [Appellant] in an attempt to prevent him from shooting Rosario.
>
> [Appellant] and Rosario ran from the scene in different directions. Officer Hockley observed [Appellant] run behind a McDonald's as Officer Hockley was running after Rosario. Another officer arrived and helped with apprehending and arresting Rosario. Officer Hockley radioed to other responding officers with a description of [Appellant] and where he fled. Officers recovered the firearm near where [Appellant] fled. The serial number had been scratched off the gun.
>
> *   *   *

- 2 -

Following the presentation of evidence [at the bench trial], the Court found [Appellant] guilty beyond a reasonable doubt of possessing a firearm with an altered manufacturer's number and simple assault. On the aggravated assault count, the Court found [Appellant] guilty of the lesser offense of recklessly endangering another person.

On March 25, 2013, the Court sentenced [Appellant] to an aggregate term of time served to 23 months of incarceration [to be followed by five years' probation for possession of a firearm with an altered manufacturer's number]. On April 9, 2013, [Appellant] was paroled on petition. . . .

Trial Ct. Op., 7/29/13, at 1-3 (unpaginated) (footnotes omitted). Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive Rule 1925(a) opinion.

Appellant's sole argument is that his conviction for possession of a firearm with an altered manufacturer's number must be vacated. Appellant's Brief at 5. He concedes that he "briefly possessed" a firearm with an altered serial number when he picked up the pistol Rosario had placed on the ground and aimed it at Rosario. *Id.* at 14-15. He argues, however, that the remainder of the Commonwealth's evidence failed to establish that he consciously disregarded a substantial and unjustifiable risk that the firearm had an altered serial number. *Id.* at 15-16.

The Commonwealth asserts Appellant came into possession of the firearm for the sole purposes of committing a criminal act. Commonwealth's Brief at 11. It reasons that by so doing, and "[c]onsidering all the

circumstances and all of the inferences," Appellant "undertook an unjustifiable risk that the gun would have an altered manufacturer's number." *Id.* Similarly, the trial court, in its Rule 1925(a) opinion, suggests that the evidence established Appellant acted recklessly with respect to the altered manufacturer's number because (1) he and Rosario were "having a heated altercation," (2) he "knew the firearm came from Rosario's waistband[,]" and (3) Rosario abandoned the firearm on the sidewalk. Trial Ct. Op. at 5.

Following our review, we agree with the parties and the trial court that a conviction under 18 Pa.C.S. § 6110.2 requires proof of culpability. We also agree that the Commonwealth must show that a defendant was at least "reckless" when taking possession of a firearm with an altered manufacturer's number. We conclude, however, that the evidence adduced in this case did not establish that Appellant acted recklessly with respect to the altered manufacturer's number on the subject firearm.

It is well settled that:

> [o]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak

and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013) (citation omitted), *appeal denied*, 77 A.3d 636 (Pa. 2013). The interpretation of the statutory definition of an offense raises a question of law, over which "our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Gravelle*, 55 A.3d 753, 755 (Pa. Super. 2012) (citsation omitted).

Section 6110.2 states, in relevant part:

> **Possession of firearm with altered manufacturer's number**
>
> **(a) General rule.**—No person shall possess a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated.
>
> **(b) Penalty.**—A person who violates this section commits a felony of the second degree.

18 Pa.C.S. § 6110.2(a), (b).

Section 6110.2 does not specify the degree of culpability, or *mens rea*, required to sustain a conviction. Section 302 of the Crimes Code, however, provides additional guidance:

> **Culpability required unless otherwise provided.**—When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly **or recklessly** with respect thereto.

18 Pa.C.S. § 302(c) (emphasis added). "Recklessly," in turn, is defined as follows:

> A person acts recklessly with respect to a material element of an offense when he **consciously disregards** a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, **its disregard** involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3) (emphases added).

By contrast, the lesser degree of culpability referred to as "negligently," for the purposes of the Crimes Code, connotes:

> A person acts negligently with respect to a material element of an offense when he **should be aware** of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's **failure to perceive it**, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(4) (emphases added). The key distinction between negligence and recklessness under Section 302 is the "failure to perceive" versus the "conscious disregard" of the risk that a material element exists in light of the totality of the circumstances. *See Commonwealth v. Heck*, 491 A.2d 212, 216 (Pa. Super. 1985).

Thus, the Crimes Code requires the Commonwealth to establish culpability to sustain a conviction for possession of a firearm with an altered

manufacturer's number. *See* 18 Pa.C.S. §§ 301(c), 302(b)(3)-(4), 302(c), 6110.2; *see generally Commonwealth v. Pond*, 846 A.2d 699, 706-707 (Pa. Super. 2004) (discussing general principle that "[a]bsolute criminal liability statutes are an exception to the centuries old philosophy of criminal law that imposed criminal responsibility only for an 'act coupled with moral culpability'"). Because the parties in this appeal agree that the Commonwealth was required to demonstrate that Appellant acted "recklessly" with respect to the altered manufacturer's number on the firearm,[4] we will review the record in light of this concession.

Instantly, Officer Hockley testified that at 4:30 a.m. on April 6, 2012, he responded to a report of a fight in progress, possibly involving a gun. N.T. at 14-15. The officer exited his vehicle near the scene and heard "sounds of disagreement or arguing."[5] *Id.* at 16. As he approached on foot, he observed Appellant and David Rosario on the sidewalk along Prince Street, facing each other and standing two to three feet apart. When the

---

[4] As discussed above, Appellant concedes possession of the firearm. We note, however, that 18 Pa.C.S. § 301(c) states, "Possession is an act, within the meaning of this section [defining voluntary act], if the possessor **knowingly** procured or received the thing possessed or **was aware** of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S. § 301(c) (emphases added).

[5] A surveillance camera recorded an altercation among **three** individuals before Officer Hockley arrived at the scene. N.T. at 59. Two of the individuals in the recording were identified as Appellant and Rosario. *Id.* Appellant testified that the third individual was his friend David Reyes was his friend. *Id.* at 69-70.

officer was within thirty to forty feet of Appellant and Rosario, he saw Rosario reach into his waistband, retrieve an item, and place it on the ground. *Id.* at 17. According to the officer, Rosario stated "something to the effect that[, ']I don't need this shit.[']" *Id.* at 17-18. Believing Rosario had a gun, the officer drew his duty weapon and continued to approach Appellant and Rosario. *Id.* at 20. He then saw Rosario punch Appellant in the face. *Id.* After striking Appellant, Rosario saw the officer and walked from the scene with his back to Appellant. *Id.* at 21-22.

Appellant, whose back was to the officer, reached down and retrieved the item Rosario left on the ground. When Appellant "came up," the officer observed a pistol in his hand and saw him point it at Rosario. *Id.* at 22. Appellant did not pause to manipulate the firearm—*i.e.* "rack the slide" or load the weapon—before pointing it at Rosario. *Id.* at 23, 26. The officer identified himself as a police officer for the first time, shouting, "[P]olice." *Id.* at 25. The officer fired several shots at Appellant. *Id.* Appellant crouched behind parked vehicles, but then walked "briskly" northbound along the Prince Street. *Id.* The officer fired "another three or four rounds" after he saw Appellant with the pistol in his hand.[6] *Id.* Appellant then "took

_____

[6] On cross-examination, Officer Hockley testified that he began firing immediately after he saw Appellant pick up the firearm. *See* N.T., at 32. The officer also estimated that he fired the second volley at Appellant "[a] second [or t]wo seconds" after the first volley. *Id.* at 37.

off at a full sprint." *Id.* The officer was unable to discern if Appellant was still in possession of the firearm. *Id.* at 36.

According to Officer Hockley, Appellant ran north on Prince Street and turned left to run west along the sidewalk of West King Street. *Id.* at 27. While in pursuit, the officer called for assistance and then saw Rosario running south on Water Street. *Id.* The officer apprehended Rosario with the assistance of an off-duty officer who happened to be in the area. *Id.* Meanwhile, Officer Hockley observed Appellant go behind a fast food restaurant at the intersection of Water and King Streets and climb a fence toward the 200 block of West Mifflin Street. Appellant was apprehended on that block by another responding police officer. *Id.* at 28. Appellant did not have a firearm when he was taken into custody. *Id.* at 29.

Appellant testified at trial. Of relevance to this appeal, Appellant stated that he knew Rosario "from New York," but they were "not close." *Id.* at 71. He acknowledged that he took possession of the firearm Rosario placed on the sidewalk. *Id.* at 76.

Additional officers responded to the scene and found a Smith & Wesson .38 caliber revolver behind an iron gate on the first block of South Prince Street, approximately twenty-five feet from the location of the altercation between Appellant and Rosario. *Id.* at 35, 43. The revolver was loaded, and the serial number was "scratched off or damaged in some way[.]" *Id.* at 46. Appellant stipulated that the manufacturer's number had

been "obliterated." *Id.* at 50. However, at the time of trial, the serial number had been partially restored using polishing and chemical etching techniques. *Id.*

As noted above, it is conceded in this appeal that Appellant possessed a firearm "which has had the manufacturer's number integral to the frame or receiver . . . obliterated." *See* 18 Pa.C.S. § 6110.2; Appellant's Brief at 15. We also discern no reason to dispute that the Commonwealth established Appellant intended to employ the firearm for criminal purposes. However, the record established only that Appellant possessed the firearm for a matter of seconds before the officer opened fire, after which Appellant ducked behind parked cars, began fleeing the scene, and discarded the weapon within twenty feet from where the altercation with Rosario occurred. The Commonwealth did not adduce any evidence that the scratching or damage to the serial number was obvious at the time of the incident. Moreover, the evidence established Appellant, when picking up the firearm and pointing it at Rosario, did not manipulate it any way to make the altered serial number apparent.

We are mindful the trial court found that Rosario initially drew the pistol from his waistband, set the firearm on the ground, and abandoned it when he saw the officer approach. We also note that Appellant testified that he knew Rosario from New York. Although the inferences from these facts could establish that Appellant was aware Rosario was carrying a firearm

illegally, they do not, even when construed in a light most favorable to the Commonwealth, prove that Appellant consciously disregarded a substantial risk that the subject firearm had its manufacturer's number obliterated.[7] Thus, we conclude that neither the manner in which Appellant came into possession of the firearm, nor the circumstances surrounding his possession and discarding of the firearm, suggest a conscious disregard of a substantial risk that the firearm's serial number was obliterated. Accordingly, we are compelled to reverse Appellant's conviction for possession of a firearm with altered manufacturer's number.

Since our decision upsets the sentencing scheme of the trial court, we vacate the judgment of sentence and remand this case for resentencing. **See Commonwealth v. Tanner**, 61 A.3d 1043, 1048 (Pa. Super. 2013).

Judgment of sentence vacated. Conviction for possession of a firearm with altered manufacturer's number reversed. Case remanded for resentencing. Jurisdiction relinquished.

---

[7] Given the parties' arguments in this case, we do not address whether Appellant was "aware" of the altered serial numbers with sufficient time to terminate his possession. **See** 18 Pa.C.S. § 301(c). Furthermore, given the plain language of Section 6110.2 and the rule of construction set forth in 18 Pa.C.S. § 302(c), we need not address whether "negligence" is an appropriate level of culpability.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2014