2017 PA Super 332

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRAVIS H. JONES, | : | |
| | : | |
| Appellant | : | No. 1274 MDA 2016 |

Appeal from the Judgment of Sentence May 31, 2016
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0002461-2014

BEFORE:   DUBOW, J., RANSOM, J., and STRASSBURGER, J.[*]

OPINION BY DUBOW, J.:                          **FILED OCTOBER 20, 2017**

Appellant, Travis H. Jones, appeals from the Judgment of Sentence of 16 to 30 years' incarceration entered in the Luzerne County Court of Common Pleas following his conviction of two counts of Possession of a Firearm Prohibited and one count of Possession of a Firearm with an Altered Serial Number.[1]   Finding that the Commonwealth presented sufficient evidence to sustain Appellant's convictions, we affirm.

The relevant facts and procedural history, as gleaned from the certified record, are as follows.  On June 16, 2014, at 6:02 AM, Kingston police responded to a 911 call of a domestic disturbance in Appellant's home at 105 Penn Street.  When the police arrived, only Appellant, who was cleaning

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105(a)(1) and 6110.2(a), respectively.

blood from the walls and the floor, was present in the home. Appellant later confessed to police that he had accidentally shot the victim, Raheem Clark, in his daughter's bedroom. Police recovered a .44 Magnum revolver with an obliterated serial number and a shotgun from Appellant's home. A ballistics expert confirmed that a bullet jacket removed from the victim by surgeons from Geisinger Wyoming Valley Hospital came from the revolver found in Appellant's home.[2]

Kingston police charged Appellant with the above crimes, as well as one count each of Aggravated Assault, Aggravated Assault with a Deadly Weapon, Tampering with Evidence, and four counts of Recklessly Endangering Another Person ("REAP").[3]

At Appellant's request, the court severed the Possession of a Firearm Prohibited charges from the Possession of a Firearm with an Altered Serial Number and Tampering with Evidence charges for purposes of trial. On January 29, 2016, the court held a bench trial on the Possession of a Firearm Prohibited charges, at which the Commonwealth presented the testimony of Kurtis Bennett, a witness, Kingston Police Detective Edward Palka, Detective Stephen Gibson, Pennsylvania State Police Sergeant Floyd

---

[2] ***See*** N.T., 4/18/16, at 133.

[3] 18 Pa.C.S. §§ 2702(a)(1); 2702(a)(4); 4910(1); and 2705, respectively. On May 31, 2016, the Commonwealth withdrew the REAP, Aggravated Assault, and Aggravated Assault with a Deadly Weapon charges.

Bowman, and Mary Dumas, Appellant's mother. The Commonwealth elicited testimony from Detective Gibson and Sergeant Floyd that demonstrated to the court that Appellant had a prior Manslaughter conviction, thus rendering him a person prohibited from possessing a firearm. Accordingly, at the conclusion of the bench trial the court convicted Appellant of two counts of Possession of a Firearm Prohibited.

On April 18, 2016, the court commenced a jury trial on the altered serial number and Tampering with Evidence charges. The Commonwealth presented the testimony of Kingston Police Officer John Bevilaqua, Detective Edward Polka,[4] Detective Stephen Gibson, and Pennsylvania State Police Corporal Elwood Spencer.

Relevant to the instant appeal, Officer Bevilaqua testified that he was the first police officer to arrive at 105 Penn Street. N.T. at 53. Officer Belvilaqua secured the scene and departed for the hospital, where surgeons gave him the bullet jacket recovered from the victim. *Id.* at 58-59.

Detective Polka testified that he and Detective Gibson advised Appellant of his *Miranda*[5] rights, and interviewed him. N.T. at 67.[6]

---

[4] Detective Polka is referred to as Detective Palka in the Notes of Testimony from Appellant's January 29, 2016 bench trial.

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] The court showed the jury Appellant's videotaped interview. This Court has reviewed Appellant's custodial interview and we note that Apellant
*(Footnote Continued Next Page)*

- 3 -

Detective Gibson testified that, in addition to interviewing Appellant with Detective Polka, he also executed a search warrant on 105 Penn Street. *Id.* at 83-84. Detective Gibson also testified that he recovered a .44 Magnum revolver from the back of a closet, underneath garbage bags full of clothing. *Id.* at 90. Detective Gibson indicated that a visual inspection of the inside of the gun's cylinder revealed that a round had been fired from the gun. *Id.* at 91.

Corporal Spencer, the Commonwealth's firearm and tool mark expert, testified that he examined the gun found in Appellant's residence. *Id.* at 107. He concluded that the bullet jacket removed from the victim had come from that gun. *Id.* at 133. Corporal Spencer also explained how one would fire this particular weapon, highlighting its safety features. *Id.* at 110-12. Corporal Spencer testified that he checked this gun for a serial number, but it had been obliterated. *Id.* at 116, 118. Corporal Spencer indicated that he found the obliterated serial number "just above the trigger part on the right-hand side" of the gun.[7] *Id.* at 116.

_____
*(Footnote Continued)*

admitted to having shot the victim, although he purports to have done so accidentally.

[7] The court admitted into evidence a photograph of the area of the gun where the serial number would have been had it not been obliterated. N.T., 4/19/16, at 117. Corporal Spencer testified that the photograph depicts a "smooth-out kind of ground-over surface where the serial location should be." *Id.* The certified record does not contain a copy of this photograph. Thus, this Court has not reviewed it.

Corporal Spencer noted that someone had obliterated the serial number to such a degree that the police could not read it and he could not restore it to a legible condition. *Id.* at 122-23.

At the close of the Commonwealth's case, Appellant made an oral Motion for Judgment of Acquittal, arguing, *inter alia*, that the Commonwealth had failed to present evidence that Appellant understood he was handling a gun without a serial number. N.T., 4/19/16 at 144. The Commonwealth argued that proving that Appellant was in possession of a gun without a serial number in his own home was sufficient to meet its burden of proof on the Possession of a Firearm with an Altered Serial Number charge. *Id.* at 144-47. The court denied Appellant's Motion, and, on April 20, 2016, the jury convicted Appellant of Possession of a Firearm with an Altered Serial Number. The jury acquitted Appellant of the Tampering with Evidence charge.

On May 31, 2016, the court sentenced Appellant to three consecutive terms of 5 to 10 years' incarceration, to run consecutive to a 1-year sentence imposed when the court earlier held Appellant in contempt of court, for an aggregate term of 16 to 30 years' incarceration.

On June 7, 2016, Appellant filed a Post-Sentence Motion, which the court denied on June 21, 2016. Appellant's timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

1.    Did the trial court err in finding Appellant guilty despite the lack of sufficient evidence to prove the elements of the offense with which he was charged?

2.    Did the trial court err in overruling Appellant's request for a demurr[er] at the close of the Commonwealth's case despite the fact that the Commonwealth failed to provide any evidence regarding [Appellant's] mental state as required in the jury instructions?

Appellant's Brief at 6.

In his first issue, Appellant challenges the sufficiency of the Commonwealth's evidence of Appellant's identity as a person prohibited from possessing a firearm. *Id.* at 13. Appellant claims that the evidence of Appellant's prior Manslaughter conviction was insufficient to prove definitively that Appellant was the person convicted for that crime. Appellant asserts that, in the absence of witness testimony connecting Appellant to the certified conviction record, the Commonwealth failed to prove this charge beyond a reasonable doubt. *Id.* at 17-21.

Our review of a challenge to the sufficiency of the evidence is well settled. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Murray**, 83 A.3d 137, 151 (Pa. 2013).

Our standard of review in a sufficiency of the evidence challenge is to determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering all the evidence admitted at trial, and drawing all reasonable inferences therefrom in favor of the Commonwealth as the verdict-winner. The trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Pruitt*, 951 A.2d 307, 313 (Pa. 2008) (citations omitted). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *Commonwealth v. Markman*, 916 A.2d 586, 598 (Pa. 2007).

The Crimes Code prohibits a person who has been convicted, in this Commonwealth or elsewhere, of a crime of violence from having a firearm in his possession or under his control. 18 Pa.C.S § 6105. The Commonwealth must present evidence of a prior conviction of a crime of violence in order to sustain a conviction under Section 6105. *Commonwealth v. Payne*, 463 A.2d 451, 456 (Pa. Super. 1983).

In the instant case, the Commonwealth alleged that Appellant had previously entered a guilty plea to a charge of Manslaughter in New Jersey. Under Section 6105, Manslaughter is a crime of violence a conviction for which precludes the possession, use, or control of a firearm. 18 Pa.C.S. § 6105(b).

In support of its claim that Appellant had a Manslaughter conviction, the Commonwealth presented the testimony of Kingston Detective Stephen Gibson. Detective Gibson explained that, based on documents he reviewed during the course of his investigation, he became aware of Appellant's prior Manslaughter conviction. N.T., 1/27/16, at 57-73. The Commonwealth introduced the following documents as evidence of Appellant's prior conviction of a violent crime: (1) a New Jersey Department of Corrections identification card with Appellant's name, date of birth, state identification

number[8] of 9589716, Department of Corrections number of 280521, his height, weight, eye and hair color, the date the identification card was issued, and a photograph of Appellant; (2) a "rap sheet" from New Jersey including Appellant's name, several aliases,[9] his date of birth, his state identification number of 958976B,[10] his Social Security number, and a felony arrest for Manslaughter on April 15, 1995; and (3) a certified record from the New Jersey Superior Court of Appellant's prior aggravated Manslaughter conviction.[11]

The Commonwealth also presented the testimony of Pennsylvania State Police Sergeant Floyd Bowmen, an expert in fingerprint examination.

_____

[8] Kingston Detective Stephen Gibson testified that a state identification number is the number assigned to a person when he is arrested. State identification numbers are specific to one state and are used for any subsequent arrests in that jurisdiction. N.T., 1/27/16, at 58-59.

[9] These aliases include Kareem Brown, date of birth 3/18/76, Kareem L. Brown, date of birth 4/28/76, Bobby Jones, date of birth 4/28/76, and Travis Jones, date of birth 3/18/76.

[10] That Appellant's state identification number from his Department of Corrections identification card does not match the state identification number on his rap sheet appears to be a typographical error in the Notes of Testimony and not evidence that the two numbers were not the same as Detective Gibson testified that the state identification number on Appellant's rap sheet "is the same state ID number that appears on the Department of Corrections card." N.T. at 62.

[11] The certified record included Appellant's alias "Bobby Hasim Jones" and Appellant's state identification number 958976B, which matched the state identification number on the Appellant's rap sheet. Appellant's date of birth on the certified record of conviction is 3/18/76.

Sergeant Bowmen testified that he compared Appellant's fingerprints with a fingerprint card that he requested from the New Jersey State Police related to an April 15, 1995 felony arrest from New Jersey. *Id.* at 83. Sergeant Bowmen testified that he compared the fingerprint card generated by the Kingston Police Department that included the name Travis Hasim Jones with a date of birth of 3/18/76 with the one he received from the New Jersey State Police which included the name Travis Jones, date of birth 3/18/76, and state identification number 958976B, and found that the fingerprints matched. *Id.* at 84-87.

We note that Appellant does not challenge the admission of the documentary evidence of his prior conviction, but rather challenges that the documents alone are sufficient to prove that he has a Manslaughter conviction. Our review of the evidence confirms that, after reviewing all of the evidence presented and drawing all reasonable conclusions therefrom, the trial court did not err in finding the Commonwealth's evidence sufficient to prove that Appellant has a prior Manslaughter conviction rendering him a person prohibited from possessing, using, or controlling a firearm pursuant to 18 Pa.C.S. § 6105. The trial court did not err in finding that the Commonwealth's evidence, when viewed in its totality, demonstrated beyond a reasonable doubt that Appellant was the man who entered a guilty plea to Manslaughter in New Jersey. Accordingly, this issue fails.

In his second issue, Appellant purports to challenge the trial court's Order denying his Motion for Judgment of Acquittal on the Possession of a

Firearm with an Altered Serial Number charge. In fact, Appellant actually challenges the sufficiency of the Commonwealth's evidence in support of his Possession of a Firearm with an Altered Serial Number conviction. Appellant's Brief at 24.

It is a second-degree felony to possess a firearm whose serial number has been altered, removed, or obliterated. 18 Pa.C.S. § 6110.2.

The interpretation of the statutory definition of an offense raises a question of law, over which "our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Gravelle***, 55 A.3d 753, 755 (Pa. Super. 2012) (citation omitted).

Appellant argues that in order to sustain this conviction, the Commonwealth had to prove that Appellant had "mental culpability with respect to the obliterated serial number." Appellant's Brief at 24, 27. Appellant avers that the Commonwealth's evidence was insufficient to prove beyond a reasonable doubt that he acted with the requisite guilty knowledge or criminal intent. ***Id.*** at 27.

The Commonwealth submits that its evidence that Appellant possessed and used a firearm with a tampered serial number is sufficient to prove the elements of the crime. Commonwealth's Brief at 6.

It is well settled that the absence of a mental culpability requirement in a criminal statute does not indicate that the legislature intended to dispense with the element of criminal intent. ***See Commonwealth v. Gallagher***, 924 A.2d 636, 638–39 (Pa. 2007) (mere absence of express

*mens rea* requirement in statutory crime is not indicative of legislative intent to impose strict liability).  Rather, "there is a long-standing tradition, which is reflected in the plain language of [§] 302, that criminal liability is not to be imposed absent some level of culpability."  ***Id***. at 639.

Section 6110.2 does not specify the degree of culpability, or *mens rea*, required to sustain a conviction.  Section 302 of the Crimes Code, however, provides additional guidance:

> **Culpability required unless otherwise provided.**--When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.

18 Pa.C.S. § 302(c).   Intentionally, knowingly, and recklessly, in turn, are defined as follows:

> **(b) Kinds of culpability defined.--**
>
> (1) A person acts intentionally with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
> >
> > (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.
>
> (2) A person acts knowingly with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his

conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(1)-(3).

In sum, we find that the Crimes Code requires that the Commonwealth prove that a defendant acted intentionally, knowingly, or recklessly with respect to the obliterated manufacturer's number on the firearm. In this case, we conclude that the relevant *mens rea* was knowledge of the obliteration and that the Commonwealth presented sufficient evidence to prove that Appellant had knowledge of the serial number's obliterated condition.

In **Commonwealth v. Shore**, 393 A.2d 889 (Pa. Super. 1978), while interpreting a related statute,[12] this Court held that the defendant's possession of a firearm with an altered serial number, and his subsequent

---

[12] 18 Pa.C.S. § 6117, Altering or obliterating marks of identification.

attempt to get rid of it, was sufficient evidence of his guilty knowledge of its altered condition, and, thus, sustained the defendant's conviction.

In the instant case, Appellant conceded he possessed the gun with an obliterated serial number, and did so long enough to use it to shoot the victim. The evidence also showed that Appellant continued to possess the gun long enough to secret it away under garbage bags of clothing in the back of a closet. Moreover, the Commonwealth's firearms expert testified that that the gun's serial number had been tampered with to such a degree that the serial number's full restoration was impossible.

Considering all of the evidence of record in the light most favorable to the Commonwealth as the verdict-winner, we conclude that the Commonwealth presented sufficient direct and circumstantial evidence of Appellant's mental culpability to sustain his jury conviction. From the evidence presented, the jury was free to infer that, like the defendant in **Shore**, **supra**, Appellant had knowledge of the gun's altered condition. Additionally, based on the jury's observations of the degree of serial number's obliteration and the length of time during which he possessed the gun, it was reasonable for the jury to infer that Appellant knew that the serial number had been obliterated. For the same reason, it is likewise reasonable for the jury to conclude that, in the time he possessed, used, and hid the weapon, Appellant would have felt the damage to the weapon caused by the extensive obliteration. Therefore, we find the Commonwealths' evidence sufficient to sustain Appellant's conviction.

- 13 -

Judgment of Sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2017