J-S20040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PATRICK MEKHI BEATTY | : | |
| | : | |
| Appellant | : | No. 1307 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 7, 2024
In the Court of Common Pleas of York County
Criminal Division at CP-67-CR-0003677-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PATRICK MEKHI BEATTY | : | |
| | : | |
| Appellant | : | No. 1308 MDA 2024 |

Appeal from the Judgment of Sentence Entered August 7, 2024
In the Court of Common Pleas of York County
Criminal Division at CP-67-CR-0000604-2023

BEFORE: OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: AUGUST 7, 2025**

Patrick Mekhi Beatty (Appellant) appeals from the judgments of sentence imposed after the trial court convicted him of three firearms violations at two separate dockets: possessing a firearm with an obliterated serial number at CP-67-CR-0003677-2022 (#3677-2022); and illegally

possessing a firearm and carrying a firearm without a license at CP-67-CR-0000604-2023 (#604-2023).[1]  We affirm.

FACTS AND PROCEDURAL HISTORY

Appellant was born on July 11, 2004.  He was 18 years old at the time of the incidents which led to his firearms convictions.

*#3677-2022*

Appellant's conviction at #3677-2022 involves events that occurred on July 21, 2022.  Appellant's mother, Rebecca Anderson, "came across some messages" on a social media app, SnapChat, from Appellant to his younger brother, Jakhi.  N.T., 4/25/24, at 10.  At the time, Appellant was residing at the York County Youth Development Center (YDC) "as the result of some juvenile charges."  *Id.* at 7, 18.  Prior to his placement, he lived with Ms. Anderson and Jakhi.  *Id.* at 6.  The messages stated, "I got to be in YDC," and asked "Khi" to "hide the jawn, the firearm."  *Id.* at 13, 23.  Ms. Anderson looked in Jakhi's bedroom and "found a firearm in a bookbag."  *Id.* at 7.  She called law enforcement "immediately because [she] wanted the firearm removed."  *Id.* at 17.  Shortly after, Appellant's probation officer, Chelsea Donnelly, and York City Police Officer, Peter Fouad, arrived at Ms. Anderson's home.  *Id.* at 29.  Officer Fouad read the SnapChat messages.  *Id.* at 30.  He also observed the firearm in the bookbag, and saw that it had "a live round in the chamber" and the serial number "was scratched off."  *Id.* at 33-34.  The

---

[1] 18 Pa.C.S. §§ 6110.2(a), 6105(a)(1), and 6106(a)(1), respectively.

firearm was identified at trial as "a black Ruger EC9s firearm with an obliterated serial number and live 9mm rounds, and a live round in the chamber of the firearm." Trial Court Opinion (TCO), 10/30/24, at 3 (citations omitted).

Appellant was charged with possessing a firearm with an obliterated serial number at #3677-2022. He was on supervised bail when the York County Department of Probation and Parole petitioned to revoke the bail because he "repeatedly violated the terms of his GPS electronic monitoring." Commonwealth's Brief at 6. On December 7, 2022, a judge revoked Appellant's bail, "making him a fugitive from justice." *Id.* (citing Supervised Bail Revocation Order, 12/7/22).

*#604-2023*

Appellant's convictions at #604-2023 involve events that occurred shortly after the revocation of his bail at #3677-2022. On January 5, 2023, officers from the York City Police Department (YCPD) responded to a report of gunshots near William Penn Senior High School. According to the criminal complaint,

> around [3:38 p.m.,] YCPD was dispatched to a shots fired incident in the area of S. Pershing Avenue and Kings Mill Rd. While [Officer Alex Raffensberger] responded to that area, School Police … gave out a description of a male matching the description of the person involved in the shots fired incident[,] and witnessed the magazine of a firearm sticking out from his sweatshirt. This male was described as a black juvenile male wearing all black[, who] was with another male who was described as [wearing] a green sweatshirt. School Police advised [that] the two subjects were walking [w]est on W. King St. [and] approaching S. Penn St.

- 3 -

[Officer Tyler] Benton and [Officer Raffensberger] exited the[ir] patrol vehicle at the intersection of Brooklyn Avenue and W. King St. and witnessed these two males walking directly towards [them].

The two males were ordered to the ground and detained. The male in the green sweatshirt was identified as [Appellant]. [Officer] Benton rolled [Appellant] over to stand him up and heard a heavy metal thud hit the concrete. [Officer] Benton reached into the green sweatshirt [Appellant] was wearing and recovered a silver/black Taurus PT145 pro, SN#NCP37237. The firearm was concealed … until it was recovered.

[Appellant] had (3) outstanding warrants, one being a criminal warrant for a gun possession charge [at #3677-2022,] and the other two were [for] criminal mischief and disorderly conduct, making [Appellant] a person not to possess a firearm.

Criminal Complaint, 1/5/23, at 5 (Affidavit of Probable Cause).

Appellant was charged with illegally possessing a firearm and carrying a firearm without a license at #604-2023.

The cases were tried separately on April 25, 2024. The trial court held two non-jury trials because the parties had agreed to "a fully-stipulated bench trial" on the charges at #604-2023 of illegally possessing a firearm and possessing a firearm without a license. N.T. at 3. The parties executed a "Stipulation of Facts for Non-Jury Trial," which the court admitted into evidence as Exhibit 1. *Id.* at 3-4. The parties stipulated:

1. On January 5, 2023, [Appellant] was arrested and taken into custody on the sidewalk in York City, York County, Pennsylvania.

2. [Appellant's] date of birth is July 11, 2004.

3. At the time of his apprehension, [Appellant] was in possession of a firearm, as defined in the [C]rim[es] [C]ode.

4. The firearm appears to be complete and functional.

5. The firearm was loaded.

6. The firearm was concealed on [Appellant's] person.

7. [Appellant] does not possess a license to carry a concealed firearm.

8. At the time [Appellant] was apprehended, a warrant was outstanding [based on Appellant's] violation of [18 Pa.C.S. § 6110.2(a)].

9. On December 7, 2022, a warrant was issued for [Appellant] for violation of bail conditions.

10. On May 23, 2019, [Appellant] was adjudicated delinquent on the charge of Escape, 18 Pa.C.S.[] § 5121(a).

11. It is the intent of the Commonwealth and [Appellant] to agree to facts establishing the elements of the crimes of Possession of Firearm Without License and Persons Prohibited from Possessing a Firearm as those charges existed at the time of the offense. [Appellant's] intent is to argue the constitutionality of the charges as they existed at the time of the offense.

Exhibit 1.

The Commonwealth also produced a copy of the December 7, 2022 bench warrant to show that Appellant was prohibited from possessing firearms. N.T. at 3. The trial court admitted the warrant as Exhibit 2. *Id.* at 4. Appellant's counsel expressed agreement with the stipulations and exhibits, adding, "[W]e can also enter the transcript from the suppression hearing."[2] *Id.* at 3.

_____

[2] At #604-2023, Appellant filed unsuccessful pre-trial motions seeking 1) suppression of the firearm based on Appellant being subjected to "a warrantless arrest without probable cause, which resulted in an illegal search"; and 2) dismissal of charges based on [18 Pa.C.S. §§ 6105 and 6106] being unconstitutional. Omnibus Pre-Trial Motion, 4/12/23, at ¶ 34; Amended Pre-Trial Motion, 7/20/23, at ¶¶ 34-44. At #3677-2022, Appellant unsuccessfully
*(Footnote Continued Next Page)*

After reviewing the evidence, the trial court stated its "finding of guilt with respect to [the two firearms charges at #604-2023]." *Id.* at 4. The court then held a bench trial on the charge at #3677-2022 of possessing a firearm with an obliterated serial number. The Commonwealth presented testimony from Ms. Anderson and Officer Fouad. Appellant did not present any witnesses. At closing, Appellant's counsel argued that the evidence did not show Appellant "knew that the serial number was obliterated." *Id.* at 43. In response, the Commonwealth noted that the grip of the firearm was "right below the obliterated serial number," which was "obvious to the naked eye." *Id.* at 47. The Commonwealth stressed evidence that the serial number "had to be chemically restored." *Id.*

The trial court found Appellant guilty of possessing a firearm with an obliterated serial number at #3677-2022. The court explained:

> I do believe the Commonwealth has met their burden. … I am convinced beyond a reasonable doubt that it was [Appellant] who was [messaging] his brother to hide this weapon. He knew about the weapon, and, circumstantially, I [find] he knew that the serial number was obliterated as well. So, with that, I am going to find him guilty….

*Id.* at 50.

The trial court ordered a pre-sentence investigation report in advance of sentencing. On August 7, 2024, the court sentenced Appellant at both

---

challenged the constitutionality of 18 Pa.C.S. § 6110.2. Omnibus Pre-Trial Motion, 7/26/23, at ¶¶ 28-38.

dockets to an aggregate 3-6 years of incarceration.[3] Appellant filed a timely post-sentence motion challenging the sufficiency of the evidence at #3677-2022. The trial court denied the motion on August 28, 2024. Appellant did not file a post-sentence motion at #604-2023.

Appellant filed timely notices of appeal at both dockets, followed by court-ordered concise statements pursuant to Pa.R.A.P. 1925(b). On October 2, 2024, this Court consolidated the appeals *sua sponte*. Appellant presents the following issues for review:

> 1. The Commonwealth presented insufficient evidence to convict Appellant of Possession of Firearm with Manufacturer Number Altered because it failed to prove [Appellant] had knowledge [that] the firearm's serial number was obliterated.
>
> 2. Section 6110.2 of the Crimes Code is unconstitutional as applied to Appellant under the Second Amendment to the U.S. Constitution and Article I, Section 21 of the Pennsylvania Constitution:
>
>> a. There is no historical tradition consistent with the **Bruen**[4] test making it illegal to possess a firearm with an altered manufacturer number or without a manufacturer number under 18 Pa.C.S. § 6110.2.
>
> 3. Sections 6105, 6106, and 6109[5] of the Crimes Code are unconstitutional as applied to Appellant under the Second

---

[3] At #3677-2022, the court sentenced Appellant to 3-6 years of incarceration concurrent to his sentence at #604-2023; at #604-2023, the court sentenced Appellant to concurrent sentences of 1-2 years for illegally possessing a firearm, and 2–4 years for possessing a firearm without a license.

[4] ***New York State Rifle & Pistol Assn, Inc. v. Bruen***, 597 U.S. 1 (2022).

[5] Section 6109(b) requires that an individual be "21 years of age or older" to apply for a license to carry a firearm.

Amendment to the U.S. Constitution and Article I, Section 21 of the Pennsylvania Constitution:

> a. There is no historical tradition consistent with the **Bruen** test to disarm individuals designated fugitives from justices under 18 Pa.C.S. § 6105.

> b. There is no historical tradition consistent with the **Bruen** test of prohibiting 18–20 year olds from carrying a firearm in public with or without a license under 18 Pa.C.S. §§ 6106 and 6109.

Appellant's Brief at 12-13 (footnote omitted).

DISCUSSION

A. *Constitutionality Claims*

We first address Appellant's constitutionality claims. Challenges to the constitutionality of a statute present "a question of law for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. McIntyre**, 333 A.3d 417, 426 (Pa. Super. 2025) (citation omitted). Statutes "are strongly presumed to be constitutional." **Pennsylvania State Ass'n of Jury Comm'rs v. Com.**, 64 A.3d 611, 618 (Pa. Super. 2013) (citation omitted). "Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution." **Id.**

This Court has explained,

> a defendant may contest the constitutionality of a statute on its face or as-applied. A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. A criminal defendant may seek to vacate his conviction by demonstrating a facial or as-applied unconstitutionality.

*Commonwealth v. Bradley*, 232 A.3d 747, 757 (Pa. Super. 2020) (citation omitted).

Appellant asserts that his three convictions should be vacated because the corresponding firearms statutes are unconstitutional "as applied" to him. *See* Appellant's Brief at 24-25. Appellant contends that under the Second Amendment of the United States Constitution, he had a "constitutional right to keep and bear arms, for self-defense, both inside and outside the home."[6] *Id.* at 31. Appellant also seeks relief based on the arms-bearing provision in Article I, Section 21 of the Pennsylvania Constitution.[7]

Regarding Sections 6105 and 6106, Appellant argues:

[T]hese statutes are unconstitutional as applied because they infringe on conduct that is protected under the text of the Second Amendment and Article I, Section 21. The Commonwealth failed to supply a "well-established and representative historical" analogue for categorically disallowing [Appellant] to possess a firearm under the circumstances prohibited by [the statutes].

*Id.* at 25 (citing *Bruen*, 597 U.S. at 30).

_____

[6] The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II.

[7] The arms-bearing provision of the Pennsylvania Constitution does not provide greater protection than its federal counterpart. *See Commonwealth v. Mead*, 326 A.3d 1006, 1015 (Pa. Super. 2024) ("[Pennsylvania's] courts have repeatedly treated Article I, Section 21 as not providing any greater restriction on government firearm regulations than the Second Amendment.").

As to Section 6110.2, Appellant relies on **Bruen** in arguing that the statute is unconstitutional as applied, "[b]ecause the Commonwealth failed to show Section 6110.2 is historically justified." **Id.** at 24. Appellant asserts that "there is no tradition of prohibiting the possession of a firearm with an obliterated serial number." **Id.** We are not persuaded by Appellant's constitutionality claims.

Appellant is not the first criminal defendant to seek appellate relief by challenging the constitutionality of Pennsylvania's firearms statutes under **Bruen**. In **Bruen**, the United States Supreme Court held that a New York statute requiring applicants to prove "proper cause" to obtain a concealed carry permit was unconstitutional. **Bruen**, 597 U.S. at 71; **see also id.** at 1 (recognizing that the United States Constitution protects "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" and "carry a handgun for self-defense outside the home").

Notably, our Supreme Court recently granted allowance of appeal to consider our decisions in two cases which interpreted **Bruen** and found that Section 6105 was constitutional. Where an appellant had a prior robbery conviction, we held that his constitutional challenge to Section 6105, "on an as applied basis, ha[d] no merit." **Commonwealth v. Farmer**, 329 A.3d 449, 458 (Pa. Super. 2024), *appeal granted*, No. 44 MAL 2025, 2025 WL 1873446 (Pa. July 8, 2025). We likewise rejected a claim that Section 6105 was "unconstitutional as applied to [an appellant] because … there is no historical analog for disarming fugitives from justice." **Commonwealth v.**

- 10 -

*Jenkins*, 328 A.3d 1076, 1088 (Pa. Super. 2024), *appeal granted*, No. 18 MAL 2025, 2025 WL 1874050 (Pa. July 8, 2025).[8]

Although **Farmer** and **Jenkins** are pending review, we cannot envision the Pennsylvania Supreme Court's decisions in those cases negatively impacting our disposition of Appellant's constitutionality claims in this case. In reviewing federal and Pennsylvania cases involving **Bruen**, we conclude that Sections 6105, 6106, and 6110.2 are constitutional as applied to Appellant.[9]

**Bruen** set forth a two-part test for determining the constitutionality of a law that restricts a person's right to possess a firearm:

> The first step of this test provides that "the Constitution presumptively protects" an individual's conduct "when the Second Amendment's plain text covers [that] conduct[.]" [**Bruen**, 597 U.S.] at 17…. At the second step, the government must "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." **Id.** "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." **Id.** (internal quotation marks and citation omitted).

---

[8] The Supreme Court has directed that the cases be listed "for oral argument at the same session as, and consecutive to" one another. **Jenkins**, **supra**.

[9] We also recognize the holding by the United States Court of Appeals for the Third Circuit "that 18-to-20-year-olds are, like other subsets of the American public, presumptively among 'the people' to whom Second Amendment rights extend." **Lara v. Comm'r Pennsylvania State Police**, 125 F.4th 428, 438 (3d Cir. 2025). However, we are not bound by that holding. **Commonwealth v Williams** --- A.3d ----, 2025 WL 1803272, 2025 PA Super 137 (July 1, 2025) (citing **Werner v. Plater-Zyberk**, 799 A.2d 776, 782 (Pa. Super. 2002) (providing federal court decisions other than those of the United States Supreme Court are not binding on this Court)).

- 11 -

*Barris v. Stroud Twp.*, 310 A.3d 175, 188 (Pa. 2024).

After *Bruen*, the United States Supreme Court rejected a challenge to the constitutionality of a law prohibiting individuals subject to a domestic violence restraining order from possessing a firearm. The Supreme Court noted that "the right secured by the Second Amendment is not unlimited." *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (citation omitted). "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Id.* at 693. As to *Bruen*:

> [The United States Supreme Court] used the term "responsible" to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right. *See, e.g.*, … *Bruen*, 597 U.S.[] at 70…. But [*Bruen*] did not define the term and said nothing about the status of citizens who were not "responsible." The question was simply not presented.
>
> * * *
>
> In … *Bruen*, this Court did not "undertake an exhaustive historical analysis … of the full scope of the Second Amendment." *Bruen*, 597 U.S., at 31…. Nor do we do so today. Rather, we conclude only this: An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.

*Id.* at 701–02.

We also decline to undertake an exhaustive analysis. As applied to Appellant's particular circumstances, Sections 6105, 6106, and 6110.2, are "consistent with the country's historical tradition of firearms regulation." *Bruen*, 597 U.S. at 17. A "national historical tradition exists of restricting firearm access to individuals deemed unable to responsibly bear arms,

- 12 -

particularly 18-to-20-year-olds." ***Williams***, ***supra***. That tradition applies to Appellant, who was 18 years old at the time of his firearms violations, and, as indicated by our factual and procedural summary, was "not to be considered a 'law-abiding citizen.'" TCO at 21. We cannot conclude that there is merit to Appellant's constitutionality claims.

### B. Knowledge of the Obliterated Serial Number

Appellant also challenges the sufficiency of the evidence supporting his conviction of possessing a firearm with an obliterated serial number. The Crimes Code states: "No person shall possess a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated." 18 Pa.C.S. § 6110.2(a). To support a conviction of possessing a firearm with an obliterated serial number, the Commonwealth must prove "a defendant acted intentionally, knowingly, or recklessly with respect to the obliterated manufacturer's number on the firearm." ***Commonwealth v. Jones***, 172 A.3d 1139, 1145 (Pa. Super. 2017).

Appellant concedes that the evidence supported a finding that he constructively possessed the firearm recovered from the bookbag. Appellant's Brief at 24. However, he asserts "there was no evidence [he] had knowledge of the obliterated serial number … because no evidence was presented demonstrating [his] possession of the firearm for an extended period of time or that he ever removed the firearm or handled it." ***Id.*** In response, the Commonwealth states that the obliterated serial number was obvious, and "the *manner* in which [Appellant] exercised control over the firearm" was

- 13 -

sufficient to show that he knew about the obliterated serial number. Commonwealth's Brief at 12 (italics in original).

We review a sufficiency claim to determine if the Commonwealth established the elements of the offense beyond a reasonable doubt, considering all of the evidence, and drawing reasonable inferences in favor of the Commonwealth as verdict-winner. *Jones*, 172 A.3d at 1142. When the trial court is the trier of fact, it is responsible for assessing the credibility of witnesses and weighing the evidence, and is free to believe all, part, or none of the evidence. *Id.* Pertinently, the Commonwealth may sustain its burden of proof "by means of wholly circumstantial evidence." *Id.* (citation omitted).

This Court has held that a defendant's "possession of a firearm with an altered serial number, and his subsequent attempt to get rid of it, was sufficient evidence of his guilty knowledge of its altered condition." *Id.* at 1145 (citing *Commonwealth v. Shore*, 393 A.2d 889 (Pa. Super. 1978)). Similarly, the trial court in this case found that Appellant asked his brother to hide the firearm, and because Appellant "knew about the weapon, he knew that the serial number was obliterated as well." N.T. at 50. The evidence supports the court's conclusion that Appellant was aware of the obliterated serial number. Thus, there is no merit to his sufficiency claim.

Judgments of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/7/2025