J-S10021-19

2019 PA Super 164

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL HILL | |
| Appellant | No. 551 EDA 2018 |

Appeal from the Judgment of Sentence January 23, 2018
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0001445-2017

BEFORE:  GANTMAN, P.J.E., STABILE, J., and COLINS, J.*

OPINION BY STABILE, J.:                              **FILED MAY 22, 2019**

Appellant, Michael Hill, appeals from his judgment of sentence of 27½-55 years' imprisonment following a jury trial for forty convictions arising from a gun trafficking enterprise.  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> The Commonwealth alleged that [Appellant] was the principal in the corrupt organization he created to straw-purchase guns and sell them to ineligible buyers.  The case proceeded to a jury trial. Alcohol, Tobacco, Firearms, and Explosives (ATF) Agent Patrick Smith testified to having experience as a police officer, state fire arms instructor, ATF training, Interstate training with Nexus, and experience examining over a thousand firearms.  Part of Agent Smith's job consisted of assisting local law enforcement with firearms tracing, or tracing a firearm from the manufacturer to distributor to gun store to the original purchaser of the firearm.

---

* Retired Senior Judge assigned to the Superior Court.

[He] has been involved in over 200 investigations involving the illegal transfer of firearms. [He] was qualified as an expert in the area of legal and illegal transfer of firearms.

Agent Smith explained that firearms trafficking is the illegal procurement and dissemination of firearms. In order to legally purchase a firearm, a federal firearms licensed dealer, or FFL, sells an individual a firearm. A FFL is an individual who has "been deemed by the authority of the ATF to conduct in the business of selling, purchasing, and transferring firearms." These FFL's, or firearm venders, must have a physical business location, but can conduct business in other locations such as a gun show. An original purchaser is the person who buys a firearm directly from a FFL, and they must fill out paperwork to have the firearm transferred to them. Federally, a purchaser would fill out an ATF Form 4473, and in Pennsylvania, a buyer fills out a record of sale from the Pennsylvania State Police. A background check is performed, and based on the results of the background check, the firearm will be transferred or it will not. A FFL must retain the ATF 4473 for 20 years, but common practice among FFL's is to keep the paperwork for the entire life of the FFL. The forms contain information about the original purchaser and the firearm purchased.

Question 11A on the ATF 4473 asks: "Are you the actual transferee/buyer of the firearm or firearms listed on this form? Warning: if you are not the actual transferee/buyer, if you are acquiring a firearm on behalf of other persons, if you are not the actual transferee/buyer, licensee cannot transfer the firearms to you. Exception: if you are picking up a firearm for another person, you are not required to answer 11A and may proceed to question B." Box 33 on the State form also asks: "Are you the actual buyer of the firearm?" Both forms contain a certification that the buyer has read and understood the form, and understand that if they are not the actual transferee/buyer, that is a crime punishable as a felony under federal law and may violate state law. The buyer also certifies that he understands making a false oral or written statement is a crime punishable as a felony under federal law and may violate state law.

Agent Smith explained that a straw purchase occurs when a firearm is purchased through illegal means. An individual who is legally allowed to purchase a firearm goes to a FFL and buys a firearm with the intention of not purchasing it for [himself].

Agent Smith identified a firearm recovered by the Philadelphia police that he was asked to investigate, a Springfield XDS 45, Serial Number 53202131 .45 caliber pistol which he traced back to the original purchaser of Philippe DeJohnette on March 27, 2015. The investigation became a joint investigation with the Montgomery County Detective Bureau after they recovered a Ruger P-90 Serial Number 62248810 .45 caliber pistol which Agent Smith traced back to the original purchaser of Corey DeJohnette. Agent Smith also identified paperwork which he used as part of his investigation that revealed purchasers of other weapons, including a Smith & Wesson Serial Number purchased by Jared Martz, and a Glock model 20 Serial Number YLV688 also purchased by Jared Martz.

Philippe DeJohnette testified that he was friends with [Appellant], and the first discussion he had with [Appellant] was about firearms. [Appellant] wanted to know if Philippe DeJohnette was able to legally purchase firearms, which he was. Philippe DeJohnette agreed to buy firearms for [Appellant] because he needed money for his mother who was sick. They went to the Oaks gun show on February 15, 2015, and [Appellant] drove Philippe DeJohnette there. If [Appellant] liked a gun, he would indicate that with a nod of his head, and Philippe DeJohnette would get that gun. [Appellant] also said that if the police ever contacted Philippe about the gun, he could get it back from [Appellant]. At the gun show, Philippe purchased guns with money from [Appellant]. Philippe DeJohnette then took one gun home and left the other with [Appellant]. Philippe DeJohnette also went to another gun show with [Appellant] on March 21, 2015 and bought another gun for [Appellant] and another for himself. Philippe DeJohnette then went with [Appellant] to another gun show on March 27, 2015, and [Appellant] offered drugs in exchange for purchasing guns. [Appellant] gave Philippe DeJohnette money to purchase two more guns.

There was a stipulation by and between counsel that [Appellant] was statutorily prohibited from possessing a firearm. [Appellant]'s house was searched, and a black Glock gun box was recovered with serial number XXM241, [as well as] a Glock 21 .45 serial number XXM241, Glock 20 .10 serial number VLE688, ammunition, a Glock .45 magazine, an extended magazine, a XP-2022 firearm with a bullet in the chamber, a firearm with obliterated serial number, a holster, and a box with more

- 3 -

ammunition. Police also found cell phones and a pay stub for [Appellant] in the same area as the weapons and paraphernalia. Police likewise recovered a Smith & Wesson gun box serial number SAF0428, and another gun box serial number 53202131 with 98 live rounds of ammunition. A nylon gun case with magazine and ammunition, two empty magazines with pistol attachments, a scope, a gun grip, and a gun stock (frame) were recovered as well. Agent Smith identified some of the items recovered from [Appellant] like the scope, grip, certain ammunition, and attachments as only being used on long guns, specifically for an SKS variant.

Corey DeJohnette testified that on December 18, 2015, [Appellant] picked him up and took him to the Oaks gun show. They walked around the gun show, and [Appellant] picked out a few guns. [Appellant] provided the money to purchase the guns, a P-Ruger 90 serial number 662488 and a Phoenix HP25 serial number 4451219. Corey DeJohnette left both guns with [Appellant].

Chad Hill testified that he knew [Appellant] as "Kevin," and that Kevin was his drug dealer. Chad also knew an individual, Jared Martz, as "Face." Face also sold drugs for [Appellant]. Chad's brother Andrew or "Drew" Person also sold drugs for [Appellant]. Chad was asked by [Appellant] if he could get anyone to buy him firearms, as Chad was not able to buy firearms legally, but he talked to Mr. Martz, and Mr. Martz went with [Appellant] to buy guns. On August 6, 2016, Chad went to the Eagle Arms Gun Show in Philadelphia with [Appellant] and Mr. Martz. [Appellant] paid the entrance fee, and then Mr. Martz got a gun, however he didn't have any of his own money on him that day. [Appellant] then took the gun with him when they dropped him off at this house. Chad Hill also went with Mr. Martz and [Appellant] to French Creek Outfitters on October 25, 2016. Mr. Martz and Chad got drugs, and [Appellant] got another gun. The Commonwealth also presented cell phone call detail records that corroborated the locations of Chad Hill with [Appellant] during various straw purchases.

Jennifer Bender went with [Appellant] to a gun show on December 18, 2016, who[m] she knew as "Kev." Ms. Bender was to report the gun she bought as stolen. They went to the Philadelphia Expo Center with "Tech", or Anthony Walker, who Ms. Bender had not met before. Tech paid the fee to get in, and both men selected a

gun. Tech added two more guns while Ms. Bender was filling out the paperwork. The system flagged Ms. Bender, so she could not purchase the guns there until further investigation was done. Anthony paid the fees for the guns.

Lieutenant Echevarria was qualified as an expert in the field of jargon and code or language interpretation. The Commonwealth also presented cell phone call detail records that corroborated the locations of the various co-defendants with [Appellant] during various straw purchases. Lieutenant Echevarria testified to text conversations that he interpreted as negotiations for a SK long gun for $700. [Appellant] also states in his text messages that he has an HK gun for an unknown individual, but that gun was never recovered. ATF Agent Smith then testified that all of the purchases by Mr. DeJohnette, Mr. Person, Ms. Bender, and Mr. Martz had indicators of straw purchasing.

[Appellant] gave a written statement where he told police that Face gave him a few guns to hold onto. [Appellant] also admitted to having someone else buy him another gun on three occasions, two with "Face" and one with "some other guy." [Appellant's] co-defendant, Anthony Walker, testified in his own defense, and [stated that he] had known [Appellant] for more than 20 years. On December 18, 2016, Mr. Walker testified that he believed he and [Appellant] were going to the gun show in Oaks so that he could buy himself a gun. Mr. Walker claimed to pay for his own admission to the gun show, and testified that he purchased an extra magazine, bullets, and target paper. Mr. Walker testified that [Appellant] made his own purchases and Ms. Bender attempted to make a purchase. Mr. Walker testified that he did not assist anyone in filling out paperwork, returned to [Appellant]'s home, watched a game, played with [Appellant]'s children, and then left the home before being pulled over by police.

[Appellant] was found guilty of Corrupt Organizations, Criminal Conspiracy-Unlawful Sale or Transfer of a Firearm, Criminal Use of a Communication Facility, Unsworn Falsification-Glock 21, serial number XXM241, 6 counts of Dealing in Proceeds of Unlawful Activity, 6 counts Unlawful Sale or Transfer of a Firearm-Makes Any Materially False Written Statement, Unsworn Falsification-Springfield XDS, serial number 53202131, Glock 34, serial number XVL654, 3 counts of Unsworn Falsification, Unsworn Falsification-Ruger P90, serial number 66248870, Phoenix HP25,

serial number 4451219, Unsworn Falsification-Smith & Wesson 99, serial number SAF0428, Unsworn Falsification-Glock 20SF, serial number YLV688, Unsworn Falsification-Ruger P95 DAO, serial number 31507796, Ruger P95 DAO, serial number 31508952, and 2 counts of Criminal Attempt-Unlawful Sale or Transfer of a Firearm-Makes Any Materially False Written Statement.

Thereafter, the Commonwealth presented evidence to the jury of a stipulation that [Appellant] was convicted on October 3, 2013 of Possession with the Intent to Deliver. The jury was then charged on Person Not to Possess. [Appellant] was found guilty of 8 counts of Person Not to Possess for possession of the following weapons-HK 9MM, Sig Sauer SP2022 with obliterated serial number, Glock 21 serial number XXM241, Springfield XDS serial number S3202131, Glock 34 serial number XVL654, Ruger P90 serial number 66248870, Phoenix HP25 serial number 4451219, Smith & Wesson 99 serial number SAF0428, and a Glock 20SF serial number YLV688. [Appellant] was also found guilty of 2 counts of attempted Person Not to Possess for the following weapons-Ruger P95 DAO serial number 31507796, and a Ruger P95 DAO serial number 31508952.

At sentencing, the Commonwealth presented evidence, over defense objection, of where two of the illegally sold firearms ended up. This case began on August 20, 2016 when a robbery with a shooting occurred in West Pottsgrove, Montgomery County. Police recovered a Ruger P90 .45 caliber gun which they traced back to Corey DeJohnette. In the robbery, Darrell Johnson was convicted of trying to rob Anthony Gibbons and then shooting him in the foot and back as he tried to flee. Another firearm was recovered from Jeremy Harris, who is a Person not to Possess. Four guns attributable to [Appellant] had not been recovered at the time of sentencing, and remained on the street. This court specifically acknowledged that [Appellant] "did not do the shooting; did not do the conduct that resulted in the injury directly. The court will weigh the evidence as it relates to any nexus between your client and the guns and how they reached the end user for those purposes only, and I will give it the proper weight." [Appellant] presented two character witnesses, and had family members present.

This Court sentenced [Appellant] to 2½ to 5 years of incarceration on Count 1 Corrupt Organizations, a concurrent 2½ to 5 years of

incarceration on Count 2 Conspiracy-Corrupt Organizations, no further penalty on counts 12-20 Unsworn Falsification, 2½ to 5 years of incarceration on Counts 21-27 Dealing in Proceeds of Unlawful Activities running concurrent to each other and all other sentences, a concurrent 2½ to 5 years of incarceration on count 28 Conspiracy to Unlawful Transfer, a concurrent 2½ to 5 years of incarceration on count 38 Making Materially False Written Statements, a consecutive 5 to 10 years of incarceration on each of counts 39-42 Making Materially False Written Statements running consecutive to each other and the prior sentence, a concurrent 5 to 10 years of incarceration on counts 43-44 Making Materially False Written Statements, Counts 54-55 Attempted False Statements merged with Count 28 Conspiracy-False Statements, a concurrent 1 to 2 years of incarceration on count 58 Criminal Use of a Communication Facility, a concurrent 5 to 10 years of incarceration on Counts 65-67, 69-71, and 73-74 Person Not to Possess, counts 75-76 attempt-Person Not to Possess merged, and a consecutive 5 to 10 years of incarceration for Possession of a Firearm with an Altered Manufacturers Number. In total, [Appellant] was sentenced to 27½ to 55 years with credit dating to December 19, 2016.

On February 13, 2018, [Appellant] filed a timely Notice of Appeal. [Appellant] and the Montgomery County Public Defender's Office requested that new counsel be appointed to represent him in his appeal. This court granted that request, and appointed new counsel for direct appeal. This court then granted a lengthy extension for counsel to file a concise statement so that the transcript could be prepared and counsel for [Appellant] could familiarize himself with the record. Thereafter, a timely concise statement was filed on August 15, 2018.

Trial Court Opinion, 9/12/18 ("Trial Ct. Op."), at 1-9 (citations to record omitted; some capitalization omitted).

Appellant raises the following issues in this appeal:

1. Whether the evidence was insufficient to sustain a conviction for Dealing in Proceeds of Unlawful Activities, 18 Pa.C.S.A. § 5111, inasmuch as there was no evidence of a financial transaction with proceeds of illegal activity.

2. Whether the evidence was insufficient to sustain a conviction for Corrupt Organizations, 18 Pa.C.S.A. § 911(b)(1), inasmuch as [Appellant] was merely an organized criminal, and there was no evidence that he received income from a pattern of racketeering activity in the acquisition, establishment or operation of any enterprise.

3. Whether the evidence was insufficient to sustain a conviction for Corrupt Organizations, 18 Pa.C.S.A. § 911(b)(4), when there was no evidence of a conspiracy to violate the provisions of that statute.

4. Whether the evidence was insufficient to sustain a conviction for Possession of Firearm with Altered Manufacturer's Number, 18 Pa.C.S.A. § 6110.2, inasmuch [as] there was no evidence that [Appellant] knew that the number had been obliterated.

5. Whether the Trial Court erred in its charge to the jury regarding Corrupt Organizations by referring to "Michael Hill's organization."

6. Whether the trial court's sentence of total confinement for a period of not less than 27½ years nor more than 55 years [of imprisonment] was manifestly unreasonable and excessive.

Appellant's Brief at 5-6.

In his first four issues on appeal, Appellant challenges the sufficiency of the evidence underlying his convictions for dealing in proceeds of unlawful activities, two subsections of corrupt organizations, and possession of firearms with altered manufacturer numbers. When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013). "[T]he facts and circumstances established by the

Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Crosley***, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015).

We first address Appellant's conviction for dealing in unlawful proceeds under 18 Pa.C.S.A. § 5111, which provides in relevant part:

(a) A person commits a felony of the first degree if the person conducts a financial transaction under any of the following circumstances:

(1) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity, the person acts with the intent to promote the carrying on of the unlawful activity.

18 Pa.C.S.A. § 5111(a)(1).

Section 5111(f) defines "financial transaction" as "a transaction involving the movement of funds by wire or other means or involving one or more monetary instruments. The term includes any exchange of stolen or illegally obtained property for financial compensation or personal gain." ***Id.***

The same subsection defines "unlawful activity" as "any activity graded a misdemeanor of the first degree or higher under Federal or State law." *Id.* "Section 5111 thus presents explicit language which clearly defines unlawful activity as any felony or first degree misdemeanor, and targets the dealing in proceeds derived from any of those various illegal activities." *Commonwealth v. Barnhart*, 722 A.2d 1093, 1096 (Pa. Super. 1998).

The evidence satisfies Section 5111's element of "unlawful activity." Appellant gave money to other persons (Corey DeJohnette, Phillippe DeJohnette, Jared Martz, and Jennifer Bender) that they used to make straw purchases of firearms. The straw purchasers carried out this scheme through unsworn falsifications on ATF 4473 forms that they were purchasing the firearms for themselves when in fact they were purchasing the firearms for Appellant. *See* 18 Pa.C.S.A. § 4904. Appellant unlawfully transferred these firearms to other individuals in violation of 18 Pa.C.S.A. § 6111. Appellant concedes that he committed all of these crimes. *See* Appellant's Brief at 30 ("the Commonwealth proved that [Appellant] aided his straw purchasers in committing unsworn falsification, conspiracy and unlawful transfer of firearms").

Further, the evidence demonstrates that Appellant engaged in "financial transactions" involving the "proceeds of unlawful activity." The financial transactions were Appellant's transfers of money to the straw purchasers for the purpose of purchasing firearms. The proceeds of unlawful activity was the

money that Appellant gave the straw purchasers. Appellant stated in a text message that he could not purchase any more guns until he sold the firearms already in his possession. The inference thus arises that the funds Appellant furnished to straw purchasers were proceeds from his illegal sales of firearms.

For these reasons, we reject Appellant's challenge to the sufficiency of the evidence underlying his conviction for dealing in proceeds of unlawful activity.

Next, we address Appellant's two convictions for corrupt organizations under 18 Pa.C.S.A. § 911. His first conviction was for violating subsection 911(b)(1), which provides in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity in which such person participated as a principal, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise.

18 Pa.C.S.A. § 911(b)(1). Section 911(h) defines several terms within subsection (b)(1). "Racketeering activity" constitutes "an act which is indictable under any of the following provisions of this title: . . . Chapter 49 (relating to falsification and intimidation) . . . [and] section 5111[.]" 18 Pa.C.S.A. § 911(h)(1)(i). "Pattern of racketeering activity" consists of "a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of this section."[1] 18 Pa.C.S.A.

_____

[1] Section 911 became effective in 1972.

- 11 -

§ 911(h)(4). Finally, "enterprise" means "means any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce and includes legitimate as well as illegitimate entities and governmental entities." 18 Pa.C.S.A. § 911(h)(3).

Here, Appellant's multiple convictions for unsworn falsification under Section 4904, which he declines to challenge on appeal, are alone sufficient to prove a "pattern of racketeering activity." Additional proof of this pattern arises from Appellant's convictions for dealing in the proceeds of unlawful activities, the sufficiency of which we have confirmed above. Finally, Appellant does not challenge the evidence of an "enterprise." Nor can he, since the evidence demonstrates that he and the straw purchasers formed an association in fact to carry out illegal purchases of firearms.

Appellant's second corrupt organizations conviction was for violating Section 911(b)(4), which provides: "It shall be unlawful for any person to conspire to violate . . . paragraph[] (1) . . . of this subsection." The evidence reflects that Appellant conspired with the straw purchasers to engage in a pattern of racketeering acts, specifically, a series of unsworn falsifications made for the purpose of purchasing firearms.

Accordingly, we reject Appellant's challenge to the sufficiency of the evidence underlying his corrupt organizations convictions.

Next, Appellant argues that the evidence was insufficient to sustain his conviction for possession of a firearm with an altered manufacturer's number under 18 Pa.C.S.A. § 6110.2. To prove this offense, the Commonwealth must demonstrate that the defendant possessed a firearm "which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated." *Id*. "The Crimes Code requires that the Commonwealth prove that a defendant acted intentionally, knowingly, or recklessly with respect to the obliterated manufacturer's number on the firearm." *Commonwealth v. Jones*, 172 A.3d 1139, 1145 (Pa. Super. 2017).

In *Jones*, this Court reasoned as follows:

In *Commonwealth v. Shore*, [] 393 A.2d 889 ([Pa. Super.] 1978), while interpreting a related statute [18 Pa.C.S.A. § 6117, Altering or obliterating marks of identification], this Court held that the defendant's possession of a firearm with an altered serial number, and his subsequent attempt to get rid of it, was sufficient evidence of his guilty knowledge of its altered condition, and, thus, sustained the defendant's conviction.

In the instant case, Appellant conceded he possessed the gun with an obliterated serial number, and did so long enough to use it to shoot the victim. The evidence also showed that Appellant continued to possess the gun long enough to secret it away under garbage bags of clothing in the back of a closet. Moreover, the Commonwealth's firearms expert testified that that the gun's serial number had been tampered with to such a degree that the serial number's full restoration was impossible.

Considering all of the evidence of record in the light most favorable to the Commonwealth as the verdict-winner, we conclude that the Commonwealth presented sufficient direct and circumstantial evidence of Appellant's mental culpability to sustain his jury conviction. From the evidence presented, the jury was

- 13 -

free to infer that, like the defendant in **Shore**, Appellant had knowledge of the gun's altered condition. Additionally, based on the jury's observations of the degree of serial number's obliteration and the length of time during which he possessed the gun, it was reasonable for the jury to infer that Appellant knew that the serial number had been obliterated. For the same reason, it is likewise reasonable for the jury to conclude that, in the time he possessed, used, and hid the weapon, Appellant would have felt the damage to the weapon caused by the extensive obliteration.

**Id.** at 1145-46.

The trial court herein concluded that this case is virtually the same as

**Jones**.

Here, almost identically to **Jones**, in [Appellant's] statement he admits to possessing the gun with the obliterated serial number. That gun [was] found in the hamper of his bedroom, and the Commonwealth's expert was unable to restore the serial number, concluding that it had been completely obliterated. [Appellant] was in possession of the gun long enough to get it to his home and secret it away in his hamper. The gun also was so altered that the Commonwealth's expert was unable to restore the serial number. Consistent with **Jones** and **Shore**, this is sufficient evidence of [Appellant's] *mens rea* to support the jury's guilty verdict.

Trial Ct. Op. at 21. We agree with this analysis. Additionally, the Commonwealth accurately points out that Appellant knew the firearm's serial number because he kept this particular firearm among his personal clothing items, loaded with a round in the chamber, and with his holster. Accordingly, Appellant's challenge to the sufficiency of the evidence underlying his conviction for possession of a firearm with an altered manufacturer's number fails.

J-S10021-19

In his fifth issue on appeal, Appellant contends that the trial court prejudiced the jury during jury instructions by stating that the Commonwealth "has charged that **Michael Hill's organization** is an enterprise. You must ask whether the entity that the Commonwealth has charged fits the definition of 'enterprise' under the law." N.T., 10/23/17, at 229. Appellant argues that this language constituted an expressed opinion by the trial court that Appellant in fact had an "organization," and that the only question was whether the organization constituted an enterprise. This argument does not warrant relief.

We review jury instructions for abuse of discretion. ***Commonwealth v. Soto***, 202 A.3d 80, 98 (Pa. Super. 2018). We must read the charge as a whole; error will not be predicated upon an isolated excerpt. ***Commonwealth v. Batty***, 169 A.3d 70, 78 (Pa. Super. 2017).

Here, the trial court charged the jury as follows:

The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If it meets that burden, then the defendant is no longer presumed innocent and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden, then you must find the defendant not guilty. Do not draw any inference because of repetition. Do not single out any individual rule or instruction and ignore the others . . . .

Consider all of the instructions as a whole and each in light of the others.

* * *

The next element involves a term that has a particular meaning under the corrupt organizations law. The term is enterprise. In this case, the Commonwealth has charged that Michael Hill's organization is an enterprise. You must ask whether the entity that the Commonwealth has charged is an enterprise and that it

- 15 -

fits the definition of enterprise under the law. This term can mean a variety of things, some of which are very easy to understand. Under the law, an enterprise can mean an individual; an enterprise can be engaged in legitimate or illegitimate activities. The defendant does not need to know everyone who is proven to be a part of the enterprise. Finally, the enterprise must be engaged in some sort of commerce, that is, must be engaged in buying or selling some products or services, legal or otherwise. Unless you find beyond a reasonable doubt that Michael Hill's organization is an enterprise, you must find the defendant not guilty of the corrupt organizations offense. If you find Michael Hill's organization is an enterprise, consider the next element . . .

Notes of Testimony, Trial, 10/23/17 at 211-12, 229-30.

These instructions adequately presented the applicable law. The trial court informed the jury that the Commonwealth bore the burden of proving its case beyond a reasonable doubt, including the element of an "enterprise." The court did not **direct** the jury to find that an enterprise existed; it merely defined this term for the jury and instructed the jury to decide whether the Commonwealth proved its existence. Neither did the court direct the jury to find that Appellant had an "organization." The court merely advised that the Commonwealth **alleged** Appellant had an "organization." Thus, Appellant's claim of error fails.

Finally, Appellant argues that his sentence of 27½-55 years' imprisonment is unreasonable and excessive. Appellant is not entitled to relief.

Appellant's claim that the trial court considered an impermissible factor at sentencing is a challenge to the discretionary aspects of sentencing. It is well-settled that "[t]he right to appeal a discretionary aspect of sentence is

not absolute." **Commonwealth v. Dunphy**, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his appeal as a petition for allowance of appeal. **Commonwealth v. W.H.M.**, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in **Commonwealth v. Moury**, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Id.** at 170. We evaluate on a case-by-case basis whether a particular issue constitutes a substantial question about the appropriateness of sentence. **Commonwealth v. Kenner**, 784 A.2d 808, 811 (Pa. Super. 2001).

Here, Appellant timely appealed from his judgment of sentence, argued that his sentence was excessive at the time of sentencing, and included a Pa.R.A.P. 2119(f) statement in his brief. Further, he raised a substantial question, namely whether his sentence was excessive in conjunction with an assertion that the trial court failed to consider mitigating factors such as his non-violent history and difficult childhood. Therefore, we will address the substance of Appellant's argument.

"When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *Moury*, 992 A.2d at 171 (combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).

Here, the trial court reviewed Appellant's PSI, so it was presumably aware of relevant information concerning his character and weighed this information along with mitigating statutory factors. The trial court explained its reasons for Appellant's sentence as follows:

> The Court imposed consecutive sentences on 6 counts. This Court imposed no further penalty on eight counts, and concurrent sentences on 21 counts. Additionally, all sentences imposed were standard range sentences. Considering the conduct at issue, and the number of illegal firearms that [Appellant] put out into the community in the hands of people deemed unfit to possess them, the sentence was reasonable. This Court considered [Appellant's] history, the guidelines, the nature of the offenses, and the effect

of the community. There is no abuse of discretion, and [Appellant's] sentence should be affirmed.

Trial Ct. Op. at 34-35. We conclude that the trial court acted within its discretion in fashioning this sentence. The jury convicted Appellant of forty criminal offenses in connection with a gun trafficking enterprise that placed multiple illegal firearms on the streets and in the hands of individuals who were not permitted to have them.

Judgment of sentence affirmed.

Judge Colins joins the opinion.

President Judge Emeritus Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/19