J-A12004-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CASSANDRA LOCKE | : | |
| | : | |
| Appellant | : | No. 803 WDA 2019 |

Appeal from the Judgment of Sentence Entered January 24, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014132-2017

BEFORE:  KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    FILED SEPTEMBER 16, 2020

Appellant, Cassandra Locke, appeals from the judgment of sentence of 7½ to 20 years of confinement, which was imposed after her conviction at a bench trial for voluntary manslaughter - unreasonable belief killing justifiable.[1] Appellant does not challenge the propriety of her conviction, which hence is affirmed.  The sole issue presented for appellate review is whether the sentencing court abused its discretion when it sentenced Appellant in the aggravated range of the sentencing guidelines without presenting reasons therefor.  After careful review, we agree with Appellant, and, accordingly, we vacate the judgment of sentence and remand for resentencing.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2503(b)

The trial court opinion summarized the facts of the case as follows:

On September 7, 2017, at approximately 10:30 p.m. Charles McGovern entered the lobby of his apartment building to find a female yelling on the phone to another person/entity. McGovern pressed the button for the elevator, however the distraught tenant told him not to get on. When the elevator doors opened McGovern then noticed a large amount of blood drops leading to the lobby near the entrance of the building manager's office. McGovern walked over to where the tenant was standing and saw Daryl Waite wearing only black boxer shorts lying in a pool of blood unresponsive and struggling to breath[e]. At that time McGovern noticed a wound on Waite's chest and took off his shirt to apply pressure. However, he was unable to tell exactly where the blood was coming from, so he put his shirt back on and waited for the ambulance, which arrived five to ten minutes later. Medics performed CPR on Waite and transported him to the hospital where he was pronounced dead, having suffered a fatal stab wound to the chest.

City of Pittsburgh Police officers responded to the apartment building and investigated the scene confirming a blood trail leading from Waite's body to the building's elevator. A corresponding blood trail was found on the third floor ultimately leading officers to apartment 302, occupied by Rhonda Robinson. As they approached there was an overwhelming smell of bleach emanating outside that apartment. Officers knocked on the door and made contact with Robinson who was detained while they performed a protective sweep of the interior of the apartment. When officers entered the apartment they noticed blood on the floor and walls, and the same strong bleach smell they had noticed upon approach.

Officers observed blood spatter on the entry doorway of the apartment, a pool of blood outside the doorway, blood on the threshold of the door, blood, beer cans, and overturned furniture throughout the apartment. Waite's pants were on the living room floor and covered in blood. Further investigation revealed a steak knife wrapped in a shirt in a trash room located on a lower floor of the apartment building, and three additional knives located on the carpet in the apartment, under the bathroom sink, and on top of a pile of clothes in the apartment.

Robinson was interviewed and stated that she had been in the apartment with Cassandra Locke (Appellant) and Locke's paramour, Daryl Waite. The three started drinking around 2:00 p.m., eventually becoming intoxicated. Approximately five to six hours after they starting drinking, when Locke was not in the room, Waite exposed himself to Robinson asking her to have intercourse with him and Locke. Robinson declined but apparently communicated the advance to Locke. Locke and Waite then had an argument in the kitchen, and Waite eventually ran out of the apartment with the stab wound inflicted by Locke. Robinson followed Waite to the lobby where he collapsed. Robinson tried to revive Waite, but he was unresponsive. She returned to her apartment and attempted to question Locke about what had happened, but Locke only indicated she was "sick of him." Robinson conceded to trying to clean up the apartment with bleach after the incident knowing the police were going to arrive. Locke fled the apartment prior to the arrival of the police.

The following day, the City of Pittsburgh police located Locke walking down 21st Street toward Joseph Street. Upon approach, Locke raised her hands in the air and indicated she was the person they were looking for. She was placed in handcuffs and made an unsolicited statement indicating she was being abused by her boyfriend and she had "cut" him.

Locke was transported to homicide headquarters where she made spontaneous inculpatory statements to detectives confessing that she had stabbed him because she was tired of Waite "beating" her. She was then taken to an interrogation room, read her pre-interrogation warnings which included her Miranda warnings, wherein she invoked her right to counsel and the interview ceased.

Officers were subsequently notified by an individual that Locke had given him a knife to discard which he placed in a sewer at the intersection of Harcum Way and 29th Street. The knife was subsequently retrieved by law enforcement at that location. It was later determined that Waite's DNA was found from the blood swab taken off the handle.

Trial Court Opinion, dated December 12, 2019, at 3-7 (citations omitted to the record omitted).

On December 5, 2018, following a bench trial, the Honorable Donna Jo McDaniel convicted Appellant of voluntary manslaughter. On January 24, 2019, Judge McDaniel held a sentencing hearing. According to the Guideline Sentence Form and the trial court's statement during the hearing, the sentencing guidelines were 48 months in the mitigated range, 60 to 78 months in the standard range, and 90 months in the aggravated range. N.T., 1/24/2019, at 2. The Guideline Sentence Form also stated that the statutory maximum sentence was 120 months to 240 months. At the conclusion of the hearing, Judge McDaniel stated:

> I think the testimony in this case stands on its own. Once again, I find two families that have been irreparably hurt by the action of their family members. One is the victim's family, the other is [Appellant]'s family. I would think that the remorse that [Appellant] showed in court today does stand for something, and I am going to sentence within the guidelines. I'm going to place the costs on Allegheny County, order [Appellant] to serve seven and a half to 20 years with credit for time served.

N.T., 1/24/2019, at 31-32. This sentence equals 90 to 240 months and, ergo, has a minimum at the top of the aggravated range and a maximum at the statutory maximum. The above-quoted statement is the entirety of Judge McDaniel's explanation in the certified record for imposing said sentence.

Appellant timely filed post-sentence motions, which were denied on May 6, 2019. On May 29, 2019, Appellant filed this timely direct appeal.[2]

_____

[2] Appellant filed her statement of errors complained of on appeal on June 21, 2019.

- 4 -

Judge McDaniel retired without filing an opinion. The case was reassigned to the Honorable Edward J. Borkowski, who filed a Pa.R.A.P. 1925(a) opinion on December 12, 2019, in which he acknowledged that Judge McDaniel's reasons for imposing Appellant's sentence were not "specifically stated on the record[.]" Trial Court Opinion, dated December 12, 2019, at 11.

Appellant now presents the following issue for our review:

Whether the sentencing court abused its discretion when the sentencing court sentenced Appellant in the aggravated range of the sentencing guidelines without presenting reasons for such a sentence?

Appellant's Brief at 4.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Lekka, 210 A.3d 343, 350 (Pa. Super. 2019).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

Commonwealth v. Manivannan, 186 A.3d 472, 489 (Pa. Super. 2018) (quotation marks and some citations omitted), reargument denied (July 7, 2018). In the current case, Appellant filed a timely notice of appeal and

preserved her issue in a post-sentence motion, and her brief includes a statement pursuant to Pa.R.A.P. 2119(f) ("Rule 2119(f) Statement"). Appellant's Brief at 12-13.

The final requirement, whether the question raised by Appellant is a substantial question meriting our discretionary review, "must be evaluated on a case-by-case basis." Manivannan, 186 A.3d at 489. In her Rule 2119(f) Statement, Appellant contends that "the sentencing court abused its discretion when it sentenced Appellant within the aggravated range without ever explaining why the circumstances of Appellant's case were atypical or why a sentence in the aggregate range was necessary." Appellant's Brief at 13. This Court has determined that, when an appellant raises a claim that the sentencing court failed to state reasons for an aggravated range sentence, a substantial question exists. Commonwealth v. Fullin, 892 A.2d 589, 592-593 (Pa. Super. 2005). Consequently, Appellant's Rule 2119(f) Statement raises a substantial question.

Appellant contends that the trial court "abused its discretion when it sentenced [her] in the aggravated range of the sentencing guidelines without presenting reasons for such a sentence[,]" including "without ever explaining why the circumstances of [her] case were atypical or why a sentence in the aggravate[d] range was necessary." Appellant's Brief at 14. By "atypical" circumstances, Appellant gave examples "like 'extreme indifference for the consequences' or 'extreme nature of the harm to the victim' which this Court has found to justify a sentence within the aggravated range." Id. at 19 (quoting Fullin, 892 A.2d at 849).

[A] sentencing court abuses its discretion when it considers the criminal act, but not the criminal himself. The Sentencing Code prescribes individualized sentencing by requiring the sentencing court to consider the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant, Commonwealth v. Swope, 123 A.3d 333, 338 (Pa. Super. 2015) (citing 42 Pa.C.S. § 9721), and prohibiting a sentence of total confinement without consideration of "the nature and circumstances of the crime[,] and the history, character, and condition of the defendant," 42 Pa.C.S. § 9725.

Commonwealth v. Luketic, 162 A.3d 1149, 1160-61 (Pa. Super. 2017)

(some internal citations and quotation marks omitted).

The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing . . . In every case in which the court imposes a sentence for a felony or misdemeanor, . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. . . . Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

42 Pa.C.S. § 9721(b). Additionally,

in any case where the trial court fails to prepare an opinion that addresses the issues upon which it passed and which are raised by a party on appeal, the net result is the same: the appellate court is deprived of explication and guidance on those issues from the judicial entity most familiar with the matter. Moreover, the parties may be left without a meaningful context within which to make their arguments on appeal, particularly as to discretionary matters.

Commonwealth v. DeJesus, 868 A.2d 379, 383 (Pa. 2005) (emphasis added).

In the current action, we are unable to determine whether Judge McDaniel properly considered the various statutory sentencing factors. Judge McDaniel did remark on the record, "I find two families that have been

irreparably hurt by the action of their family members. One is the victim's family, the other is [Appellant]'s family." N.T., 1/24/2019, at 31. Arguably, this comment could be interpreted as consideration of the "impact on the victim and the community," but it is not an explicit reference. Luketic, 162 A.3d at 1161 (citing 42 Pa.C.S. § 9721). Also, it is a generic finding, as every crime – but particularly homicide – impacts the victim's and the perpetrator's families; nothing about this reason is individualized to Appellant. See id. ("[t]he Sentencing Code prescribes individualized sentencing"). Furthermore, this one statement still fails to demonstrate that Judge McDaniel deliberated on any of the other statutory sentencing factors. See id. (listing statutory sentencing factors).

Further, we agree with Appellant that Judge McDaniel failed to state adequate reasons in support of its imposition of an aggravated-range sentence. See Appellant's Brief at 14, 19; see also Commonwealth v. Hill, 210 A.3d 1104 (Pa. Super. 2019) (where sentence is in the standard range of the Sentencing Guidelines, Pennsylvania law views the sentence as appropriate). Judge McDaniel failed to provide a sufficient contemporaneous statement of reasons in support of an aggravated-range sentence on the record in open court and, later, did not prepare an opinion addressing the reasons for imposing that sentence; we are thereby concerned that Judge McDaniel failed to acknowledge or to consider Appellant's character, rehabilitative needs, and mitigating evidence, resulting in a lack of

individualized sentencing and a deviation from the norms of sentencing.[3] Compare N.T., 1/24/2019, at 31-32 with 42 Pa.C.S. § 9721(b); Luketic, 162 A.3d at 1160-61; DeJesus, 868 A.2d at 383.

Where a court has "departed from . . . sentencing norms and violated [an a]ppellant's constitutional right to due process, . . . these errors require remand for resentencing." Commonwealth v. McCauley, 199 A.3d 947, 953 (Pa. Super. 2018); see also 42 Pa.C.S. § 9721(b) ("the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed"; "[f]ailure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant). Consequently, we are constrained to vacate the judgment of sentence and to remand for resentencing. In light of our disposition, Judge McDaniel's retirement from the bench will require the President Judge of the Court of Common Pleas of Allegheny County to reassign this case to a new judge for purposes of resentencing.[4]

Conviction affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

---

[3] This Court has previously expressed concern about Judge McDaniel's failure to impose individualized sentences and deviation from the norms of sentencing, in part due to the absence of a statement on the record of her reasons in support of the sentence imposed. See Commonwealth v. McCauley, 199 A.3d 947, 953 (Pa. Super. 2018); Commonwealth v. Bernal, No. 138 WDA 2016, unpublished memorandum at 8-17 (Pa. Super. filed December 19, 2016).

[4] It may be assigned to Judge Borkowski, who wrote the Rule 1925(a) opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/16/2020