J-S17010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEDAYAH NESMITH | : | |
| | : | |
| Appellant | : | No. 2067 EDA 2021 |

Appeal from the Judgment of Sentence Entered August 17, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003436-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEDAYAH NESMITH | : | |
| | : | |
| Appellant | : | No. 2068 EDA 2021 |

Appeal from the Judgment of Sentence Entered August 17, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003437-2018

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                **FILED JUNE 8, 2022**

Jedayah Nesmith appeals from the aggregate judgment of sentence of twenty-three and one-half to forty-seven years of imprisonment imposed after she pled guilty to third-degree murder and other crimes related to the death of Azim Jones-Fearon.  We affirm.

The trial court offered the following factual background of these cases, taken from the factual bases for the pleas presented by the Commonwealth:

On March 22, 2017, at approximately 8:00 p.m., the police responded to a radio call of a possible deceased three-year-old at 7101 North 15th Street, Philadelphia. Upon arrival, the officers and medics discovered two-year and 11-month-old Azim Jones-Fearon lying on a bed in the rear bedroom of apartment B5, where [Appellant] resided. The child was pronounced dead at the scene, and he was later transported to the Office of the Philadelphia Medical Examiner. The medical examiner determined the immediate cause of death to be homicidal violence, and the manner of death to be homicide. The medical examiner determined the child to be severely emaciated, dehydrated, and partially mummified, as well as having multiple blunt impact injuries.

In the months leading up to his death, the child had been living with [Appellant] at her apartment. Approximately, three or four weeks prior to the discovery of the child's body, [Appellant] was at her residence with the child. [Appellant] left the apartment to smoke K2 outside, while the child remained alone in the apartment. As a result of [Appellant]'s intoxication, [Appellant] was uncertain as to how long she was outside or away from the apartment. When she returned to the residence, [Appellant] found the child foaming at the mouth. Thereafter, [Appellant] fled the residence without rendering any assistance.

On March 16, 2017, [Appellant] contacted a man (hereafter, "the witness") via text message. [Appellant] asked the witness to call her as soon as possible, and then asked to meet with him. The witness met with [Appellant] the next day, in the area of 25th and Lehigh, Philadelphia. [Appellant] offered the witness $1,000 to dispose of the child's body for her. [Appellant] gave the witness the key to her residence; however, she did not yet disclose to the witness her address. After a period of back and forth messaging between [Appellant] and the witness, [Appellant] told the witness her address.

On March 22, 2017, the witness, accompanied by a[n unidentified] female, went to [Appellant]'s apartment. Using the key that [Appellant] had provided him, the witness entered the apartment and found the child deceased on the bed. After the

police were called about the dead child, the witness left the apartment to get his phone that contained the messages between himself and [Appellant]. The witness then returned with the phone to the apartment, where the police had since arrived. The witness proceeded to give the phone to police and provide them with statements regarding his contact with [Appellant].

The police arrested [Appellant] on March 23, 2017. Following *Miranda* warnings, [Appellant] gave several statements to Philadelphia Police detectives at the Special Victims Unit. [Appellant] admitted to leaving the child in order to smoke K2 and to asking the witness to help her dispose of the body. However, she denied offering money for the disposal of the body.

Trial Court Opinion, 11/5/21, at 2-4 (cleaned up).

Appellant was charged with, and pled guilty to, third-degree murder, endangering the welfare of a child ("EWOC"), recklessly endangering another person ("REAP"), abuse of corpse, possessing an instrument of crime, and criminal use of a communication facility. Following a presentence investigation, the trial court sentenced Appellant to twenty to forty years of incarceration for murder, a consecutive sentence of three and one-half to seven years for EWOC, and no further penalty on the other charges.[1] Appellant filed a timely post-sentence motion for reconsideration of sentence, which the trial court denied on September 8, 2021. Appellant filed a timely

_____

[1] The trial court determined that the REAP conviction merged with the murder conviction for sentencing purposes. *See* Trial Court Opinion, 11/5/21, at 1 n.1.

notice of appeal, and both Appellant and the trial court ultimately complied with Pa.R.A.P. 1925.[2]

Appellant presents the following question for our review:

Whether the trial court erred in ordering a sentence . . . for third degree murder of twenty to forty years, that was at the top of the sentencing guidelines, when substantial mitigating circumstances existed including the decedent's already grave and critical physical condition when he came into Appellant's care, the Appellant's lack of a prior criminal record, her age, her acceptance of responsibility, her remorsefulness, her drug intoxication when the offense occurred, her rehabilitative needs at the time of sentencing, and the significant mitigating facts related to Appellant's role in the crime?

Appellant's brief at 9 (cleaned up).

Appellant's question implicates the discretionary aspects of her sentence. Therefore, we consider the issue mindful of the following:

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

_____

[2] Appellant initially filed a late concise statement, but was later granted leave to file one *nunc pro tunc*.

*Commonwealth v. Lucky*, 229 A.3d 657, 663-64 (Pa.Super. 2020) (internal quotation marks omitted).

Appellant filed a timely notice of appeal. She filed a timely motion for reconsideration of sentence contending therein that the trial court abused its discretion by imposing an excessive, manifestly unreasonable sentence outside of the guidelines that "was not guided by sound judgment." Post-Sentence Motion, 8/22/21, at ¶ 11. Appellant has also included in her appellate brief a Pa.R.A.P. 2119(f) statement in which she contends that the trial court abused its discretion in sentencing her by imposing a manifestly unreasonable sentence without sufficient reasons and without giving "appropriate weight to the mitigating circumstances when sentencing [Appellant] to the statutory maximum." Appellant's brief at 32.

We agree with the Commonwealth that Appellant's claim that the trial court gave inadequate consideration to some of the sentencing factors, or failed to accord them the weight that the appellant deems appropriate, does not present a substantial question warranting appellate review.[3] *See*, *e.g.*, *Commonwealth v. Radecki*, 180 A.3d 441, 469 (Pa.Super. 2018) (collecting

_____

[3] Rather, to raise a substantial question, the appellant's claim must be based on a wholesale failure of the trial court to consider the requisite factors. *See*, *e.g.*, *Commonwealth v. Ventura*, 975 A.2d 1128, 1133 n.2 (Pa.Super. 2009) (holding a claim that the court "imposed [the] sentence based solely on the seriousness of the offense and failed to consider all relevant factors" raised a substantial question, while the claim that the court gave inadequate consideration of mitigating factors does not present a substantial question).

cases). However, we conclude that Appellant's contention that the statutory maximum sentence was manifestly unreasonable and excessive and imposed without sufficient reasons raises a substantial question. *See Lucky*, *supra* at 664.

The following legal principles govern our consideration of Appellant's sentencing challenge. "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (cleaned up). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009). Hence, we review the sentencing court's sentencing determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014).

While broad, "the trial court's discretion is not unfettered." *Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa.Super. 2011). The sentence imposed "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact

on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "Where the sentencing court had the benefit of a presentence investigation report ('PSI'), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa.Super. 2019) (cleaned up).

Mindful of these governing principles, we turn to the trial court's reasoning for imposing the statutory maximum sentence. Based upon the offense gravity score of fourteen, Appellant's prior record score of zero, and the fact that the victim was under thirteen years old, the guidelines called for a sentence of ninety-six months to the statutory limit for the murder conviction. *See* Trial Court Opinion, 11/5/21, at 6 n.7. In arriving at Appellant's sentence, the trial court

> explicitly considered everything presented during the course of the case, including the presentence report and sentencing memoranda from both sides. The court considered the prior record score investigation, defense submissions regarding mitigation,[4] as well as several supplemental memoranda from the defense. Additionally, the court considered testimony from medical examiner Dr. Victoria Sorokin at the sentencing hearing, statements from the victim's family, as well as [Appellant's] own statements. Finally, the court explicitly considered the sentencing

---

[4] Specifically, the trial court took into account the mitigating evidence that Appellant had a "terrible childhood, which included losing her home, sexual abuse, and extremely oppressive conditions." Trial Court Opinion, 11/5/21, at 7. The court indicated that the mitigating evidence contributed to its decision not to impose further penalties on the non-merging convictions. *Id*.

guidelines, [Appellant]'s rehabilitative needs, the need for the protection of the public, and the gravity of the offense in relation to the impact on the victim and on the community.

*Id*. at 5 (cleaned up) (citing N.T. Sentencing, 8/17/21, at 78-81).

Weighing the competing factors, the trial court determined that a sentence at the top of the standard guideline range, which was equal to the statutory maximum, was appropriate:

[A]s the court noted at the sentencing, while the guidelines explicitly contemplate a victim under the age of 13, they do not contemplate a victim under the age of three in the kind of conditions that the victim in this case was found. . . .

[Appellant] who was a certified nursing assistant, left a battered child under the age of three, who was entrusted to her care, alone in her apartment while she left to get high on K2 for an undetermined amount of time. When she returned and found the child foaming at the mouth, clearly in need of immediate medical care, she left the premises without calling for help, leaving the child alone to die of dehydration, starvation, and multiple injuries. It is difficult to imagine a more egregious misbehavior or more compelling justification for . . . a sentence at the top of the standard range for third[-]degree murder.

*Id*. at 6.

Appellant presents a two-prong attack on the trial court's decision. First, she highlights the mitigating evidence, including her own self-serving testimony, that suggests that she was not the one responsible for injuries that were discovered in the victim postmortem, but rather his fractures and emaciation occurred over the time when he was still in his mother's custody. *See* Appellant's brief at 36-38. Appellant then offers a discussion of other cases in which defendants responsible for the death of children received

substantially lesser sentences than hers, concluding that her sentence therefore is too severe. *Id*. at 39-47. Appellant acknowledges that the other cases, most of which do not involve convictions for murder, "were cases of children recklessly or negligently deprived of medical care on religious grounds," but suggests that she should receive comparable leniency because "she suffered a significant psychotic reaction to ingesting K2" such that she was unable to call the police. *Id*. at 43.

The Commonwealth counters that the trial court's decision to impose a guideline-range sentence was not unreasonable. It notes that the trial court was under no obligation to accept Appellant's "self-serving narrative that she received a child who was already malnourished, dehydrated, and suffering from broken bones and contusions," contentions that are not supported by the record, which suggests that at least some of the injuries occurred while he was in Appellant's care. Commonwealth's brief at 8-9. Even accepting her version of events, "the facts nevertheless showed that [Appellant] failed to get the child the medical help that he needed, and she failed to feed him and give him water," resulting in his death "in [Appellant's] custody nearly a month after she gained custody." *Id*. Furthermore, after the victim's death, she contacted someone to dispose of the body rather than alerting authorities, such that the child's body had begun to mummify by the time he was discovered. *Id*. at 9. Furthermore, the Commonwealth asserts that there is no authority to support Appellant's "implicit argument that her sentence is

excessive if defendants in unrelated cases received shorter sentences than she." *Id*. at 9.

Upon review of the certified record, the trial court opinion, and the parties' briefs, we perceive nothing suggesting "that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Antidormi***, ***supra*** at 760. The trial court plainly considered and weighed all pertinent factors and arrived at the conclusion that the sentencing guidelines offered an appropriate sentence. While Appellant would have preferred that the court placed more emphasis on her mitigating evidence, it is not the role of this Court to "re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." ***Macias***, ***supra*** at 778. Therefore, because we discern no basis to conclude that the trial court abused its considerable sentencing discretion, we affirm Appellee's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/08/2022